Linda **MULLIGAN**, Plaintiff-Appellant,

v.

Francis **HAZARD**, et al.,
Defendants-Appellees.

No. 84–3555.

United States Court of Appeals,
Sixth Circuit.

Argued June 4, 1985.

Decided Nov. 26, 1985.

Rehearing and Rehearing En Banc
Denied Jan. 7, 1986.

Frederick G. Cloppert, Jr., argued, Cloppert, Portman, Sauter & Latanick, Columbus, Ohio, for plaintiff-appellant.

Gene Holliker, argued, Ohio Atty. Gen., Federal Litigation Section, Columbus, Ohio, for defendants-appellees.

Before CONTIE and MILBURN, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Plaintiff-appellant Linda Mulligan appeals from a summary judgment granted in favor of defendants-appellees, Ohio State University Board of Trustees and several of the University's administrators. Mulligan brought her action in the district court, pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that defendants unconstitutionally restricted her tenure rights as a faculty member of the University, in violation of the Fourteenth Amendment's due process clause as well as the First and Fifth Amendments, by amending the University's tenure policy in 1975 to provide for campus-specific tenure in place of the then prevailing policy of according tenure on a university-wide basis. For the reasons hereinafter stated, we conclude that Mulligan's action is barred by the statute of limitations and we, therefore, affirm the district court's grant of summary judgment.

### I.

Mulligan began her employment with Ohio State University in 1973 when she was hired as a visiting assistant professor with assignment to the branch campus at Marion. At the time of her hiring, Mulligan signed a Notice of Appointment (NOA) which provided the terms of her employment. Besides detailing her appointment as a visiting professor at Marion, the NOA stated that "the By-Laws of the Board of Trustees, ... the Rules for the University Faculty and ... the Official Actions of the Board of Trustees are expressly incorporated herein...." The Rules of the University Faculty provided, at this time, that an appointment as a professor did not contain any commitment by the Trustees that the appointee would be given tenure or that he would be reappointed at the conclusion of the term. In his letter offering Mulligan employment at Marion, Dr. Edward McDonagh, the chairman of the University's sociology department, elaborated on the University's tenure policy. He indicated that tenure was generally granted when the faculty member was reappointed for his or her eighth year but that it was sometimes granted earlier if the faculty member had already received a promotion to the position of associate professor. Dr. McDonagh did not promise Mulligan, in his letter, that she would receive tenure or reappointment.

At the beginning of the 1973 fall semester, Mulligan was offered and accepted an appointment as a regular non-visiting assistant professor. Again, the NOA which she signed stated that she would be assigned to the Marion campus and that the relevant by-laws and university rules were incorporated by reference. This appointment was renewed in each of the subsequent years and Mulligan accepted her reappointments by signing further NOAs. At all times, Mulligan was assigned to the Marion campus.

At a meeting of the Board of Trustees, on September 5, 1975, a resolution was passed to amend the rules regarding tenure. Previously, a tenured faculty member held that status throughout the university system, *i.e.*, at the main campus in Columbus and at the various regional campuses. The September 5th resolution, which was subsequently incorporated into the University Faculty Handbook, declared that, from that date forth, faculty members who received tenure would only hold tenure at the particular campus where they rendered their primary service. On February 1, 1980, the Board of Trustees passed a resolution stating that those faculty members who rendered their primary service at the

regional campuses would be designated as members of a "regional campus faculty."

Mulligan continued to teach at the Marion campus after the 1975 tenure change. She signed a new NOA each year from 1975 through at least 1982.[1] Each of these NOAs contained a provision which made her employment subject "to the rules and regulations and personnel policies of the Board of Trustees." In 1979, Mulligan was awarded tenure and given a promotion to the position of associate professor.

Mulligan requested a transfer to the Columbus campus in 1980. Her request was denied. She then wrote several letters to various University administrators complaining about the alleged "second class citizenship" of the regional campus faculty and their underrepresentation on the various university faculty committees. Defendant Kent Schwirian, then chairman of the sociology department, wrote back to Mulligan denying her charges. In his letter, Schwirian criticized Mulligan for making accusations about him to the Provost instead of confronting him directly. Defendant Provost Ann Reynolds also wrote to Mulligan and criticized her for not first seeking to resolve her grievances within her department prior to contacting the Provost's office. Both Schwirian's and Reynolds' letters were circulated among several of the University's administrators. After receiving a complaint from one of Mulligan's students about her action in changing the scheduled meeting times of her classes, defendant Dean Francis Hazard wrote to Mulligan, on April 8, 1983, and advised her that her action violated university rules. A copy of Hazard's letter was placed in Mulligan's personnel file.

Mulligan filed this present action with the district court in October 1983. In her complaint, brought pursuant to 42 U.S.C. §§ 1983 and 1985, Mulligan alleged that her Fourteenth Amendment due process rights had been abridged by the defendants' actions. Specifically, Mulligan contended that she had been assured by the chairman of the sociology department, when she was initially hired in 1973, that her rights and privileges as a faculty member in the sociology department at the Marion campus would be essentially the same as those for a faculty member teaching at the Columbus campus. She further alleged that the Board of Trustees failed to give the university faculty notice or an opportunity for a hearing prior to its adoption of the 1975 change in the tenure rules. The tenure change, Mulligan contended, substantially changed her contract and diminished the value of her expected tenure. Mulligan added pendent state law claims for breach of contract and tortious interference with Mulligan's contract rights. In her prayer for relief, she sought an injunction as well as compensatory and punitive damages. Specifically, Mulligan requested an order which would require the defendants to grant her university-wide tenure and to integrate her in all aspects of the operation and academic life of the University's sociology department.

The defendants motioned the district court for summary judgment. On May 15, 1984, the court granted their motion. In his accompanying memorandum of law, District Judge Duncan ruled that Mulligan did not have a property interest in the retention of the pre-1975 tenure system. Judge Duncan based his holding on the fact that the Board of Trustees had changed the tenure rule in 1975 while Mulligan did not receive tenure until 1979. Judge Duncan further held that the institution of campus-specific tenure did not deny Mulligan a protected liberty interest. Thus finding no merit to Mulligan's federal claims, Judge Duncan declined to entertain her pendent state claims.

Mulligan's motion for reconsideration was rejected by an order of Judge Duncan issued June 14, 1984. On July 12, 1984, Mulligan filed her appeal from both orders to this court.

1. Mulligan is presently a member of the Marion faculty. While the record only contains the NOAs which she signed through 1982, presumably she continued to sign NOAs or similar contractual agreements after 1982 as well.

## II.

As an initial matter, we must determine whether Mulligan's action is barred by the statute of limitations.[2] Congress did not establish a statute of limitations for actions brought under 42 U.S.C. §§ 1983 and/or 1985. The courts, consistent with the mandate of 42 U.S.C. § 1988,[3] have turned to the analogous state statutes of limitations. *Board of Regents v. Tomanio,* 446 U.S. 478, 483-4, 100 S.Ct. 1790, 1794-5, 64 L.Ed.2d 440 (1980). The Supreme Court has recently held that, as a matter of law, § 1983 actions should be characterized as personal injury actions for the purpose of determining the applicable statute of limitations. *Wilson v. Garcia,* — U.S. —, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In so ruling, the Court rejected the use of other arguably analogous statutes of limitations, such as those for breach of contract actions, tort claims for damages to property, tortious acts committed by public officials or the states' catchall period of limitations. *Id.* at 1948-9.

Depending upon the nature of the personal injury, there are two different Ohio statutes of limitations which could apply to the action. First, an action to recover for bodily injury must be brought within two years after the cause arose. Ohio Rev. Code § 2305.10. Second, an action for libel, slander, assault, battery, malicious prosecution, false imprisonment or malpractice will be barred if not brought within one year after the cause accrued. Ohio Rev.Code § 2305.11.[4] Before discussing which of these statutes is applicable, however, we must first determine whether the holding of *Wilson v. Garcia* should be applied retroactively to the instant case.

The Supreme Court did not address the issue of whether the holding of *Wilson v. Garcia* should be applied retroactively to cases already filed but not decided prior to *Wilson.* However, the Court, itself, applied its holding retroactively in the *Wilson* case by upholding the U.S. Court of Appeals' decision to apply New Mexico's statute of limitations for personal injury actions in lieu of another statute which the New Mexico Supreme Court had earlier held was applicable to a factually similar § 1983 action and which would have barred the plaintiff from prosecuting his lawsuit.[5]

**2.** Though not discussed by the district court in its memorandum granting defendants' motion for summary judgment, the issue of the statute of limitations was raised by defendants in their brief in support of their motion. Therefore, the issue is properly before this court.

**3.** 42 U.S.C. § 1988 states, in relevant part:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of [the civil rights statutes] ... shall be exercised and enforced in conformity with the laws of the United States ...; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause....

**4.** Arguably, Ohio Rev.Code § 2305.09(D) (action for injury to the rights of the plaintiff not arising on contract nor enumerated in §§ 2305.10 to 2305.12, inclusive, § 2305.14 and 1304.29) is also applicable to personal injury actions. However, § 2305.09(D) is more in the nature of a catch-all statute of limitations, as compared to §§ 2305.10 and 2305.11, and is, therefore, inapplicable to federal civil rights actions brought under 42 U.S.C. §§ 1983 and 1985. *Wilson v. Garcia,* — U.S. —, 105 S.Ct. at 1948.

Recently, the Ohio legislature amended § 2305.11 and removed assault and battery actions from its scope. The legislature concurrently enacted a new statute, Ohio Rev.Code § 2305.111, which provides for a one year limitations period for assault and battery actions. Since § 2305.11 had previously provided a one year limitations period for such actions, the amendment and enactment of new section 2305.111 effects no change in the limitations period. For purposes of our discussion, we will refer to § 2305.11, as it read prior to the amendment, since it was in effect at the time the lawsuit was filed.

**5.** In *DeVargas v. New Mexico,* 97 N.M. 563, 642 P.2d 166 (1982), the New Mexico Supreme Court ruled that the plaintiff's § 1983 action was barred by the two year statute of limitations contained in § 41-4-15(A) of the New Mexico Tort Claims Act.

*Wilson* is similar to the Supreme Court's recent decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), where the Court's holding on the applicability of a statute of limitations was applied retroactively to the case at hand even though the Court did not expressly discuss whether its decision should, in fact, be given retroactive effect. By so doing, the Court in *DelCostello* was impliedly holding that the statute of limitations should be applied retroactively. *Smith v. General Motors Corp.*, 747 F.2d 372, 375 (6th Cir. 1984) (*en banc*); [6] *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2d Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). *See also Gray v. Amalgamated Meat Cutters Local 540*, 736 F.2d 1055 (5th Cir.1984). *Cf. Zemonick v. Consolidation Coal Co.*, 762 F.2d 381, 384–5 (4th Cir.1985) (refused to give retroactive effect to *DelCostello*). Similarly, *Wilson* implicitly mandates that its holding be applied retroactively.

■ As noted above, Ohio has two statutes of limitations which relate to personal injury actions, Ohio Rev.Code §§ 2305.10 and 2305.11. In our opinion, § 2305.11 is the more appropriate of the two statutes of limitations for actions arising under the civil rights statutes. As the Supreme Court noted in *Wilson*, Congress enacted the Civil Rights Act of 1871 in order to combat the violence that was being perpetuated by the Ku Klux Klan and other organizations against the newly emancipated slaves.[7] The concern of Congress, thus, was with perpetuators of intentional tortious conduct. While both §§ 2305.10 and 2305.11 theoretically encompass intentional tort actions, § 2305.11, which applies to actions involving assaults, batteries and the like, more specifically encompasses the sorts of actions which concerned Congress as it enacted the civil rights statutes. Accordingly, we hold that the one year limitations period contained in § 2305.11 governs Mulligan's actions.

Mulligan's cause of action accrued in 1975 when the Board of Trustees changed the University's tenure policy. Since Mulligan's action was brought in 1983, which is eight years after the Board's action, it is time barred by the statute. Even if we were to accept Mulligan's contention that the cause accrued in 1980, when she allegedly first became aware of the tenure change,[8] her action is still, nonetheless, time barred. Thus, regardless of the merits of her claim, she is barred from bringing it at this late date.

The only portion of this action which is not time barred is Mulligan's claim relating

---

**6.** As Judge Martin explained:
> If the Supreme Court had not intended for *DelCostello* to apply retroactively, the Court easily could have reserved the issue or could have applied the statute of limitations prospectively, as it did in *Chevron [Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) ]. By applying the statute of limitations to extinguish the claim in the case before the Court, we feel the Supreme Court demonstrated its intent to apply *DelCostello* retroactively.

*Smith v. General Motors Corp.*, 747 F.2d 372, 375 (6th Cir.1984) (*en banc*).

**7.** In discussing the historical impetus for the enactment of the civil rights statutes, the Court stated:
> The specific historical catalyst for the Civil Rights Act of 1871 was the campaign of violence and deception in the South, fomented by the Ku Klux Klan, which was denying citizens their civil and political rights [citation omitted]. The debates on the Act chronicle the alarming insecurity of life, liberty and property in the Southern States, and the refuge that local authorities extended to the authors of these outrageous incidents. [quotation omitted] By providing a remedy for the violation of constitutional rights, Congress hoped to restore peace and justice to the region through the subtle power of civil enforcement.

*Wilson v. Garcia*, — U.S. —, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985).

**8.** This contention is untenable. The Board's 1975 action was published in the Rules of the University Faculty that very same year and has continued in effect since then. The NOAs, which Mulligan signed every year from 1975 through at least 1982, specifically incorporated these rules. Therefore, Mulligan had notice of the rule since its inception. Further, Mulligan has alleged no specific misstatement or falsehood by any university official which could have caused her to believe that the 1975 tenure change was not in effect.

to defendant Hazard's April 8, 1983 letter. Mulligan contends that this letter, which was placed in her personnel file, violated a protected liberty interest by "stigmatizing" her in any future job searches. She argues that since her file would likely be given to her prospective employers she would be harmed by the allegedly inaccurate accusations contained in Hazard's letter.

A determination regarding whether the April 8, 1983 letter deprived Mulligan of her alleged liberty interest in an accurate personnel file requires consideration of the letter in the context of her entire file, including the letters of August 24, 1981 and October 23, 1980 which Mulligan is barred from challenging. The October 23, 1980 memorandum from Assistant Dean C. Leslie Carpenter to Dean Francis Hazard indicated that Mulligan had unilaterally cancelled her scheduled classes for Sociology 101. Carpenter indicated that the change was unfair to the students and that "this matter only creates further doubt about her attitude toward and commitment to her teaching duties in Marion." Hazard indicated agreement. The August 24, 1981 letter to Mulligan from Kent Schwirian, chairman of the Sociology Department, indicated that Mulligan violated the "normal channels of communication" in complaining about several matters. The letter of April 8, 1983 to Mulligan from Hazard charged Mulligan with failure to comply with University policy with respect to the scheduling of classes and accused her of persistent violation of the policy.

In light of material already present in Mulligan's file, especially the October 1980 memorandum, it is clear that the letter of April 8, 1983 is merely cumulative, and, regardless of whether Mulligan could establish a constitutionally protected liberty interest in the accuracy of her file,[9] the April 1983 letter alone effects no deprivation of that interest. *Lake Michigan College Federation of Teachers v. Lake Michigan Community College*, 518 F.2d 1091, 1096–97 (6th Cir.1975), *cert. denied*, 427

U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976).

Accordingly, the judgment of the district court is AFFIRMED.

9. *Kendall v. Board of Education of Memphis,*   627 F.2d 1, 5 (6th Cir.1980).