**Solitaire DiPASALGNE, Plaintiff,**

v.

**ELBY'S FAMILY RESTAURANTS, INC., Defendant.**

No. C–2–82–1593.

United States District Court, S.D. Ohio, E.D.

Aug. 15, 1986.

Robin L. Parker, Martin, Eichenberger & Baxter, Worthington, Ohio, for plaintiff.

Robert G. Palmer, Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the defendant's motion for partial summary judgment on plaintiff's claim brought under 42 U.S.C. § 1981. The plaintiff, Solitaire DiPasalgne, was employed by the defendant, Elby's Family Restaurants, until her discharge on October 19, 1979. The plaintiff alleges that she was discharged because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1870, 42 U.S.C. § 1981. She initiated this action on November 9, 1982 by filing her EEOC Notice of Right to Sue, the EEOC determination letter and the Charge of Discrimination filed with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission with the district court clerk.

The defendant moves for summary judgment on grounds that plaintiff's section 1981 claim is barred by the applicable statute of limitations. It bases its motion upon *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (U.S.1985), which characterized actions brought under 42 U.S.C. § 1983 as personal injury actions for statute of limitations purposes, and *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985) wherein the Sixth Circuit applied *Wilson* and held that a one-year statute of limitations must be applied in section 1983 actions brought in Ohio. The defendant argues that the reasoning in the above cases applies to section 1981 actions and, accordingly, a one-year statute of limitations should be applied in this case. The plaintiff argues that the above authority is applicable only to section 1983 cases. She maintains that the Sixth Circuit's decision in *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir.1975), which applied a six-year statute of limitations period in section 1981 actions, was not overruled by *Wilson* or *Mulligan* and, therefore, her section 1981 claim was timely filed.

In *Mason,* the Sixth Circuit considered whether to apply the statute of limitations under the Ohio Civil Rights Act, O.R.C. § 4112.05, or O.R.C. § 2305.07 in section 1981 actions. The former provided a one-year limitation period for the initiation of suits by the Ohio Civil Rights Commission while the latter provided a six-year period for those actions based upon a liability "created by statute." *Id.* at 521. The court found the latter applicable because "the most analogous action under state law would be an action upon a liability created by statute within the meaning of O.R.C. § 2305.07." *Id.* at 522.

Since at least *Mason,* the Sixth Circuit has consistently looked to the state law most closely analogous to the factual circumstances alleged in the complaint in order to determine the appropriate statute of limitations. This approach was followed with respect to claims filed under both sections 1981 and 1983. *See Sutton v. Bloom,* 710 F.2d 1188, 1190–91 (6th Cir.1983), *cert. denied,* 464 U.S. 1973, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984); *Kilgore v. City of Mansfield,* 679 F.2d 632, 634 (6th Cir.1982); *Warner v. Perrino,* 585 F.2d 171, 174–175 (6th Cir.1978); *Carmicle v. Weddle,* 555 F.2d 554, 555 (6th Cir.1977).

This approach was specifically rejected by the Supreme Court in *Wilson.* The Court first discussed the problems inherent in such an approach.

> The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983 ... If the choice of the statute of limitation were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim.

*Id.* 471 U.S. at 272–74, 105 S.Ct. at 1945–46. The Court then proceeded to follow the analytical framework set forth in 42 U.S.C. § 1988 for choosing the correct source of law to be applied in civil rights actions. It concluded that this section requires courts "to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Id.*, at 275, 105 S.Ct. at 1947. After considering the legislative and historical background of the Civil Rights Act of 1871 and section 1983, the Court further determined that § 1983 claims could be best characterized as tort actions for the recovery of damages for personal injuries. Consequently, in determining the statute of limitations to apply in section 1983 actions, the Court held that district courts should look to the statute of limitations for personal injury actions of the appropriate state. *Id.* at 275–83, 105 S.Ct. at 1947–51.

Subsequently, consistent with the Supreme Court's ruling in *Wilson* and relying upon the historical origins of the Civil Rights Act of 1871, the Sixth Circuit held that Ohio's one-year statute of limitations for actions involving assaults, batteries and the like should be applied in all section 1983 actions. *Mulligan, supra* at 344. Because of these developments, the defendant now argues that *Mason*, which pre-dated both *Wilson* and *Mulligan*, is no longer controlling. The defendant further argues that section 1981 actions, like section 1983 actions, should be characterized as personal injury actions. Therefore, the defendant maintains, the rationale set forth in *Wilson* and the Sixth Circuit's decision in *Mulligan* requires that a one-year statute of limitations should be applied in section 1981 actions.

■ The Court agrees that *Mason* is no longer controlling authority given the recent developments in case law. *Cf. Goodman v. Lukens Steel Co.*, 777 F.2d 113, 120 (3rd Cir.1985). However, the Court does not believe that application of *Wilson* in this case inexorably leads to application of a one-year statute of limitations. *Wilson* only requires that courts select the one

most appropriate statute of limiations for each type of civil rights action. That the Supreme Court has determined that all section 1983 actions should be characterized as personal injury actions for statute of limitation purposes does not mean that section 1981 actions likewise must be so characterized. Rather, following the approach adopted by the Supreme Court in *Wilson*, this Court must look to the history of and Congress' purpose in enacting section 1981 in order to characterize section 1981 for statute of limitation purposes. *Id.*, 471 U.S. at 269–70, 105 S.Ct. at 1943–45. Moreover, the choice of a particular limitations period must further "federal interests in uniformity, certainty and the minimization of unnecessary litigation" and may not be inconsistent with the right asserted. *Id.* at 269–70, 105 S.Ct. at 1943–45; *Goodman, supra* at 119.

The Court's research reveals that only one Court of Appeals has addressed the issue of characterization of section 1981 for statute of limitation purposes. In *Goodman*, the Third Circuit reasoned that the equal protection provisions of section 1981 were parallel to those of section 1983 and that a violation of an individual's rights to equal protection constitutes an injury to the person. *Id.* at 119. Moreover, the court noted that section 1981's predecessor was founded on the Thirteenth Amendment which outlawed slavery and involuntary servitude. The court further observed that Congress looked to constitutional authority in both the Thirteenth and Fourteenth Amendment when it re-enacted section 1981 in 1870. *Id.* at 119. Both of these Amendments focus primarily upon injuries to the individual rights of the person. Finally, the court expressed doubt that Congress would have intended different limitation periods for sections 1981 and 1983 and pointed out that differing limitation periods would create a bizarre result because of the substantial overlap in the nature of section 1981 and 1983 claims. *Id.* at 120. Therefore, the majority concluded that "the personal injury statute of limitations of the forum state supplies the most analogous

statute of limitations for actions brought under § 1981." *Id.* at 120.

Judge Garth dissented from the majority's characterization of section 1981 as a personal injury cause of action. Judge Garth pointed out, as the majority observed, that § 1981 on "its face relates primarily to racial discrimination in the making and enforcement of contracts." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1979). More importantly, Judge Garth observed in his well researched opinion that the legislative history, purpose and application of section 1981 differed significantly from the history, purpose and application of § 1983.

> [section] 1983 was conceived, and has been generally applied, as a personal injury statute. Section 1981, however, is more fundamentally concerned with injury to the contractural or economic rights of minorities

> .    .    .    .    .

*Goodman, supra* at 132.

It appears that the legislative history bears out Judge Garth's view. Section 1981 was originally enacted as section 1 of the Civil Rights Act of 1866. It provided:

> That all persons born in the United States ... shall have the same right, in every State and Territory in the United States, to make and enforce contracts, to sue, be parties and give evidence, to inherit, purchase, lease, sell, hold and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens ...

Act of April 9, 1866, c. 31, § 1, 14 Stat. 27. As the Supreme Court noted in *Johnson,* the operative language of the above section relates primarily to the making and enforcement of contracts. *Id.* 421 U.S. at 459–460, 95 S.Ct. at 1716, 1719–20. Moreover, at the time of the enactment of the Civil Rights Act of 1866, Congress had before it and was acting upon substantial evidence of injustices against minorities which were primarily of an economic nature. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 427–428, 88 S.Ct. 2186, 2197, 20 L.Ed.2d 1189.[1] Indeed, much of the debate on the Civil Rights Act of 1866 focused on the need to secure the freedom of contract and employment for blacks. *See Goodman, supra* at 132–133 (Garth, J., dissenting).

By the time Congress considered the Civil Rights Act of 1871, its focus had shifted "to the activities of groups like the Ku Klux Klan, operating wholly outside the law." *Jones, supra* 392 U.S. at 435, 88 S.Ct. at 2186. Congress' subsequent enactment of the Civil Rights Act of 1871, the predecesor to section 1983, was a response to the activities of the Klan and the widespread violence against blacks. *Wilson, supra* 471 U.S. at 276–79, 105 S.Ct. at 1947–49; *Mulligan, supra* at 344; *Goodman, supra* at 134 (Garth, J., dissenting). Thus, it is abundantly clear that sections 1981 and 1983 were enacted to correct two different social evils. As Judge Garth succinctly summarized in his dissenting opinion:

> Section 1983 ... arose from and was designed to respond to an entirely different set of circumstances than those which led to the original enactment of what became § 1981. [The] 1866 Congress was concerned with granting freedom and equality through economic guarantees which had long been denied the now newly freed blacks. It was economic freedom which enabled a man to be free. The focus was to identify those rights, previously denied, that would enable a person to sustain himself and his family once the mechanism of the master-slave society was dismantled. These concerns stand in sharp contrast to concerns about violence, physical injury and

---

1. During the debate on the Civil Rights Act of 1866, references were made to assaults against blacks. However, as Judge Harlan points out in his dissent in *Jones,* these references appear to have been made during the debate on the Freedman's bill and were not in reference to the Civil Rights Act of 1866. *Jones, supra,* 392 U.S. at 462, 88 S.Ct. at 2186 (Harlan, J., dissenting).

lawlessness that motivated the Congress of 1871.

*Goodman, supra* at 134.

■ Given the legislative history of and Congress' purpose in enacting section 1981, the Court believes that it would be inappropriate to characterize section 1981 actions as claims sounding in tort for personal injury. Rather, because section 1981 was designed primarily to vindicate the economic rights of newly freed blacks wrongfully denied the freedom of employment and contract, section 1981 should be characterized for statute of limitations purposes as a cause of action for breach of contract. After reviewing the relevant statute of limitations for breach of contract provided by Ohio law, the Court further concludes that the "one most appropriate statute of limitations" for section 1981 claims is the six-year statute of limitations period for breach of implied and express contract delineated in O.R.C. § 2305.07.

■ In so holding, the Court believes that the six-year statute of limitations period represents an appropriate balance between the substantial economic rights of minorities which Congress intended to protect in enacting section 1981 and Ohio's interest in prohibiting the prosecution of stale claims of a similar nature. *Wilson, supra,* 471 U.S. at 268–73, 105 S.Ct. at 1943–45. Moreover, the Court believes that choosing a single six-year statute of limitations period for section 1981 claims advances the federal interests of minimizing unnecessary litigation and promoting certainty and uniformity. The Court also believes that application of a uniform six-year statute of limitations for all section 1981 actions will reduce litigation by allowing litigants pursuing claims under both Title VII and section 1981 to defer filing of a law suit in federal court pending the outcome of the Title VII concilliation process. In contrast, a one-year statute of limitations would encourage such litigants to file court actions prior to the completion of the concilliation process in order to preserve their rights under section 1981.

The Court recognizes that its holding today may create some inconsistent results in actions involving claims asserted under both section 1981 and 1983. The Court appreciates the value of consistency in the application of statutes of limitations but observes that inconsistencies are not unknown in this type of litigation. Indeed, federal courts continuously face non-uniform and inconsistent applications of statute of limitations with respect to Title VII claims and pendent law claims typically asserted in employment discrimination and civil rights cases. *See Wilson, supra* at ——–——, 105 S.Ct. at 1951–53 (O'Connor, J., dissenting); *Goodman, supra* at 136 (Garth, Jr., dissenting). More importantly, the Court believes that the characterization of section 1981 claims as personal injury actions merely for the purpose of maintaining consistency in section 1981 and 1983 actions would greatly over-estimate the value of maintaining consistency at the expense of advancing Congress' purpose in enacting section 1981.

For the above stated reasons, the Court finds that the most appropriate statute of limitations for section 1981 claims brought in Ohio is six years. Whereas the plaintiff filed her section 1981 claim slightly more than three years after her cause of action accrued, the Court finds that her section 1981 claim is not barred by the statute of limitations. Accordingly, defendant's motion to dismiss is DENIED.

WHEREUPON, upon consideration and being duly advised, the Court finds defendant's motion to dismiss plaintiff's section 1981 claim on statute of limitation grounds to be without merit, and it is, therefore, DENIED.

IT IS SO ORDERED.