**Donald SHANNON, et al., Plaintiffs,**

v.

**RECORDING INDUSTRY ASSOCIATION OF AMERICA, et al.,
Defendants.**

**No. C–2–84–1565.**

United States District Court,
S.D. Ohio, E.D.

March 30, 1987.

Denis J. Murphy, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for plaintiffs; Peter J. Jacobson, Washington, D.C., of counsel.

Charles M. Rosenberg, Benesch, Friedlander, Copelan & Aronoff, Cleveland, Ohio, for defendants Recording Industry Ass'n of America.

Gortikov, Schoenfeld, Gould and Flannery, Anthony W. Nyktas, U.S. Atty., and James E. Rattan, Asst. U.S. Atty., Columbus, Ohio, for defendants Chretien, Mitchell, O'Rourke and Hunt.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiffs Donald and Rose Shannon bring this action under the provisions of 15 U.S.C. § 1, *et seq.*, the Fourth and Fifth Amendments to the United States Constitution, and various state law causes of action. In an order issued February 24, 1986, this Court dismissed defendant William Hunt from this action, dismissed plaintiffs' claim under 42 U.S.C. § 1985(2), and dismissed counts III, IV, V, and VII against defendants Chretien and Mitchell. The only claims which remain against those defendants are *Bivens* claims under the Fourth and Fifth Amendments in counts I and II, and a state law claim under Ohio Rev.Code § 1331.01(B). This matter is before the Court on the motions for summary judgment of defendants Chretien and Mitchell, and a motion for judgment on the pleadings filed on behalf of the remaining defendants.

Plaintiffs Donald and Rose Shannon, together with Robert H. Kirk, Jr. and Robert H. Kirk, Sr. operated a partnership in Newark, Ohio known as Utopia Ultrasound/People's Stereo Place. Defendants are the Recording Industry Association of America, RIAA's director, RIAA's special counsel in charge of anti-piracy, RIAA's special assistant counsel, and RIAA investigators and representatives. Defendants Mitchell, Chretien, and O'Rourke are Special Agents of the Federal Bureau of Investigation and defendant William Hunt is an Assistant United States Attorney who was in charge of the investigation and prosecution of plaintiffs for copyright infringement.

The complaint alleges that plaintiffs and the Kirks were in the business of duplicating and distributing sound alike and party tapes and the business of salvaging, manufacturing and distributing cassettes and eight-track tapes of various sound recordings. For a period of time, the company manufactured finished tapes using copyrighted musical compositions, for which plaintiffs allege they forwarded appropriate royalty payments to the Harry Fox Agency, Inc. Plaintiffs state that beginning in November, 1979 they ceased manufacture of such copyrighted musical compositions and devoted their business exclusively to party, sound alike, and salvage tapes.

In February of 1978 plaintiffs began conducting business with Murray Kaplan, who represented that he owned the rights to various uncopyrightable party tapes which he sold to plaintiffs. Mr. Kaplan also sold plaintiffs recordings of discontinued and salvage tapes and cassettes on Capitol and

RCA labels. Mr. Kaplan was later arrested for selling counterfeit sound recordings.

In the summer of 1980, Special Agent O'Rourke, working in an undercover capacity, purchased several tapes from Robert Kirk, Jr. On September 5, 1980 Magistrate Mark R. Abel issued two search warrants authorizing federal agents to search the premises of Utopia Ultrasound and plaintiffs' residence for tapes, equipment, and business records which were the fruits and instrumentalities of pirating sound recordings. Plaintiffs allege that the affidavit in support of the search warrant created a misleading impression of counterfeit activity and that no counterfeit tapes or labels were found at plaintiffs' residence. The complaint further alleges that items were seized from both the residence and the business in derogation of the search warrants. Plaintiffs claim that defendants issued defamatory press releases relating to the raid. Plaintiffs were ultimately forced to close their business.

The remaining counts against the federal defendants are counts I, II, and VI. Those claims allege as follows:

Count I—In this *Bivens* claim under the Fourth Amendment, plaintiffs allege that the F.B.I. agents caused the issuance of a search warrant based upon knowing misstatements of fact and inadequate investigation. Moreover, it is alleged that defendants exceeded the scope of the search warrants in seizing plaintiffs' property.

Count II—In this *Bivens* claim under the Fifth Amendment, plaintiffs allege that the defendants conspired to deprive them of their property without due process of law and for the purpose of obstructing justice.

Count VI alleges that defendants entered into a trust, as that term is defined in O.R.C. § 1331.01(B), for the purpose of restraining trade and preventing competition.

## I.

All defendants in this action have moved for judgment on counts I and II of the complaint on the basis that plaintiffs' *Bi-*

*vens* claims in those counts are barred by the applicable statute of limitations. It is defendants' position that the same limitations period which governs section 1983 actions should also apply to *Bivens* actions, that is, Ohio's personal injury statute of limitations.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court recognized an implied private right of action for damages directly under the Fourth Amendment for plaintiffs whose constitutional rights under that amendment have been violated by federal officials. Subsequent to *Bivens,* the Supreme Court also recognized a private right of action against federal officials under the Fifth Amendment. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

■ Since *Bivens* actions are brought directly under the Constitution, there is, of course, no statutorily imposed limitations period on these actions. However, it is a widely recognized practice for the federal courts to borrow the most analogous state statute of limitations to determine the timeliness of *Bivens*-type actions. *See, e.g., Gibson v. United States,* 781 F.2d 1334 (9th Cir.1986); *Doe v. United States Department of Justice,* 753 F.2d 1092 (D.C. Cir.1985); *Gaspard v. United States,* 713 F.2d 1097, 1102 n. 11 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); *Leonhard v. United States,* 633 F.2d 599, 615 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Beard v. Robinson,* 563 F.2d 331, 334 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978). Plaintiffs' argument that no limitations period should bar an action brought to redress violations of constitutional rights is without merit. The vast majority of section 1983 actions are brought to recover for violations of constitutional rights, and plaintiffs concede that those actions may be barred by a limitations period. Even federal actions, if brought at any time, "would be 'utterly repugnant to the genius of our laws.'"

*Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985), *citing Adams v. Woods,* 2 Cranch 336, 341, 2 L.Ed. 297 (1805).

In *Wilson v. Garcia, supra,* the Supreme Court addressed the question of the appropriate statute of limitations for civil rights claims brought pursuant to 42 U.S.C. § 1983. The Court determined that the tort action for the recovery of damages for personal injuries was the best alternative available for section 1983 actions and was one that was not inconsistent with the federal civil rights remedy. Applying the *Wilson* rationale in the context of Ohio's personal injury statutes of limitations, the Court of Appeals for the Sixth Circuit has determined as a matter of law that the one year limitations period set forth in Ohio Rev.Code § 2305.11 is the most appropriate limitations period for section 1983 actions. *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); *Jones v. Shankland,* 800 F.2d 77, 80 (6th Cir.1986). Defendants argue that the *Wilson* analysis should be extended to apply to *Bivens* action against federal officials.

The characterization of a particular type of federal claim is a matter of federal law. *Wilson v. Garcia, supra.* In the Court's view, the same considerations that prompted the *Wilson* court to hold that a section 1983 claim is best characterized as a personal injury claim apply equally to actions brought pursuant to *Bivens.* In *Bivens,* the Supreme Court permitted persons to recover damages for an "invasion of personal interests in liberty," 403 U.S. at 395, 91 S.Ct. at 2004, for the reason that the "essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Id.* at 397, 91 S.Ct. at 2005, *citing Marbury v. Madison,* 1 Cranch 137, 157, 163, 2 L.Ed. 60 (1803).

Certainly, *Bivens* actions are the federal, judicially created counterparts to section 1983 actions. *Gibson v. United States,* 781 F.2d 1334, 1341 (9th Cir.1986). Both types of actions are federal in nature and are brought to redress alleged violations of constitutional rights which are uniquely personal. Both actions potentially encompass broad ranges of tort-type actions; in fact, these actions are commonly referred to as "constitutional tort" cases. Plaintiffs concede that the objective of the federal constitution is to "guarantee and protect personal rights." The only difference between these remedies is that *Bivens* actions permit recovery of damages from federal officials for the transgression of constitutional rights, while section 1983 permits similar recovery from state officials to vindicate constitutional wrongs. *See Mitchum v. Foster,* 407 U.S. 225, 230, 92 S.Ct. 2151, 2155, 32 L.Ed.2d 705 (1972). Indeed, the very same conduct at issue in this lawsuit could be the subject of a section 1983 action if engaged in by a state law enforcement officer. Considering the purposes of both federal remedies, the Court finds no basis upon which to distinguish *Bivens* actions from section 1983 actions for limitations purposes. *Accord, Pope v. Bond,* 641 F.Supp. 489 (D.D.C. 1986); *Lopez v. Aran,* 649 F.Supp. 853 (D.P.R.1986).

Consistent with the foregoing analysis, the Court finds that plaintiffs' *Bivens* claims are claims for personal injury. The Sixth Circuit has determined that in section 1983 actions Ohio's one year personal injury statute of limitations applies retroactively to cases pending but not decided prior to *Wilson v. Garcia. Mulligan v. Hazard, supra.* The cases cited by plaintiff regarding longer statutes of limitations in *Bivens* actions under Ohio law were decided prior to *Wilson* and *Mulligan* and are no longer controlling. Thus, according to the Sixth Circuit's analysis, plaintiffs' *Bivens* action must have been filed within one year after the accrual of their cause of action.

In count I, plaintiffs allege that defendants caused the issuance of a search warrant to be made based on intentional misstatements of fact and inadequate methods of investigation. Plaintiffs further assert that defendants exceeded their authority under the search warrant and that the searches conducted on September 9, 1980

violated their constitutional rights. In count II of the complaint, it is asserted that defendants conspired to deprive plaintiffs of lawful possession of their property without due process of law. In furtherance of the conspiracy, it is alleged, *inter alia,* that defendants caused misstatements of fact to be made in support of the search warrant, caused search warrants to issue, caused a search to be made, threatened plaintiffs during the course of the search, and denied plaintiffs an opportunity to gain return of their property.

 Federal law governs the question of when the state statute of limitations begins to run in a federal action. *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984). The limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action, that is, when the plaintiff should have discovered his injury through the exercise of reasonable diligence. *Id.* at 273. Plaintiffs argue that since the government had no obligation to return their property until the criminal proceedings against them terminated, and since they were disabled from obtaining a legal remedy regarding return of their property until those criminal proceedings terminated, this action did not accrue until that date. This argument is not persuasive for the reason that it is based upon a misconstruction of the *Bivens* cause of action. Plaintiffs were not constrained against bringing a *Bivens* action because they had no "legal remedy for return of their property" until their criminal proceedings ended. *Bivens* is not an action for the return of property; it is an action for damages against federal officials who violate the constitutional rights of others. In the present case, plaintiffs' injury occurred, at the latest, on the date that their property was unreasonably seized and retained without due process.

██ Plaintiffs also argue that they were not aware of their cause of action in 1980 because they had no knowledge of the reasons for the search and seizure or that the affidavit was false and had no understanding of the criminal charges filed against them. However, to commence the running of the limitations period, it is only required that plaintiff know or have reason to know of the *injury* which is the basis of his action. It is not required that plaintiffs know the "facts upon which the government formed a basis for swearing out a probable cause affidavit." Plaintiffs' injury in counts I and II occurred when their property was seized by the FBI, an action of which they were concededly aware. Moreover, in May 1981 plaintiffs filed two actions under Rule 41(e), Federal Rules of Criminal Procedure, which provides in relevant part:

A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized.

The prosecution of these Rule 41 actions is incontrovertible evidence that plaintiffs were aware of their alleged injury at least as early as 1981.

Plaintiffs further contend that the illegal conduct complained of continued from the date of the execution of the search warrants until the criminal action was dismissed and their property was returned to them, in other words, that defendants continued to unlawfully retain their property until March 1984. The First Circuit has had an opportunity to consider this continuing violation theory in the context of a section 1983 action alleging deprivation of property without due process of law. The court stated:

Altair's argument concerning the continuing violation exception to the general rule confuses a continuing act with a single act that has continuing consequences. *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981) ("A continuing violation is occasioned by continuing unlawful acts, not by continued ill effects from an original violation.") In a § 1983 case concerning the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation. *Schaefer v. Stack,* 641 F.2d 227 (5th Cir.1981); *Kittrell v. City of Rock-*

*wall,* 526 F.2d 715 (5th Cir.), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 379 (1976).

*Altair Corp. v. Pesquera DeBusquets,* 769 F.2d 30, 32 (1st Cir.1985). *Accord, Schaefer v. Stack,* 641 F.2d 227 (5th Cir.1981).

▪ The Court is in agreement with the First Circuit that in actions brought under the Fourth and Fifth Amendments for unreasonable searches and seizures and the deprivation of property without due process of law, the injury arises from the unlawful act of seizure of the property. The fact that defendants retained the seized property is merely a consequence of the alleged illegal seizure and any injuries sustained by plaintiffs stem from that single unlawful act. Although plaintiffs have alleged conduct other than the actual seizure of the property as illegal conduct, it is essential to remember that plaintiffs' claims are brought pursuant to the Fourth and Fifth Amendments. Those amendments protect against unreasonable searches and seizures of property and against deprivation of life, liberty, or property without due process of law. Thus, while many of plaintiffs' allegations in counts I and II are material as background information, they do not allege conduct which is protected within the parameters of the Fourth or Fifth Amendments. The essence of plaintiffs' complaint in counts I and II is that defendants conspired to deprive them of the lawful possession of their property. That deprivation occurred when the property was seized.

▪ Finally, plaintiff asserts that the Ohio savings clause, Ohio Rev.Code § 2305.15, has tolled the statute of limitations against the private defendants. That statute provides in relevant part:

> When a cause of action accrues against a person, if he is out of state ... the period of limitation for the commencement of the action ... does not begin to run until he comes into the state....

Under Ohio law, a defendant who is not amenable to *personal* service within the state is deemed "out of state" for purposes of the savings clause. *Seeley v. Expert, Inc.,* 26 Ohio St.2d 61, 65–66, 269 N.E.2d

121 (1971). Accordingly, under the Ohio Supreme Court's interpretation of this rule, a non-resident defendant or a foreign corporation which has no statutory agent in Ohio will never receive the protection of the statute of limitations. *Renfroe v. Eli Lilly & Co.,* 686 F.2d 642, 649–50 (8th Cir.1982); *Mead Corp. v. Allendale Mutual Ins. Co.,* 465 F.Supp. 355 (N.D.Ohio 1979).

Defendants do not argue that this interpretation of the savings clause does not apply to prevent the statute of limitations from running against them. Rather, they argue that to apply the Ohio savings clause in this *Bivens* action would be inconsistent with the federal policy underlying that cause of action.

▪ In *Wilson v. Garcia,* the Supreme Court noted that when borrowing an analogous state limitations period in federal actions, the "length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." 471 U.S. at 269, 105 S.Ct. at 1943. The Court finds unpersuasive defendants' argument that application of the Ohio savings provision would contravene federal policy. There is no distinction between the general policies and rationale underlying the state and the federal rules on statutes of repose. While the Court sympathizes with defendants' assertion that application of this rule works an injustice against out of state defendants, it would be anomalous to borrow a limitations period from the state while at the same time disregarding the state provisions regarding tolling of that limitations period. While the Court may not agree with the wisdom of this particular tolling provision, it is not prepared to substitute its judgment for that of the Ohio legislature on this question.

In summary, the Court finds that plaintiffs' *Bivens* claims in counts I and II of the complaint are barred against the resident federal defendants by the statute of limitations. The savings clause, however, prevents the limitations period from running against the non-resident, private defendants. The Court does note that in its previous order, it dismissed plaintiffs'

claims under 42 U.S.C. § 1985(2) for failure to state a claim upon which relief can be granted. This ruling, of course, would apply equally to the private defendants.

## II.

 Defendants Chretien and Mitchell also argue that they are absolutely immune from suit with regard to plaintiffs' state law claim in count VI of the complaint. Count VI asserts a cause of action under Ohio Rev.Code Chapter 1331 for the formation of a trust in restraint of trade. Upon consideration of the arguments raised and the cases cited by defendants, and for the reasons stated in this Court's order of February 24, 1986, the Court finds that defendants are absolutely immune from prosecution for violation of the state statute. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Lawrence v. Acree*, 665 F.2d 1319, 1327 n. 12 (D.C.Cir.1981); *Mir v. Fosburg*, 646 F.2d 342, 346 (9th Cir.1980); *Miller v. DeLaune*, 602 F.2d 198, 200 (9th Cir.1979); *Coleman v. Federal Intermediate Credit Bank*, 600 F.Supp. 97, 99 (D.Ore.1984); *Kemp v. Block*, 586 F.Supp. 330, 332 n. 3 (D.Nev.1984). *See also Strothman v. Gefreh*, 739 F.2d 515, 520 (10th Cir.1984) (qualified immunity for violations of *federal* statutes).

WHEREUPON, the Court HOLDS that defendants Mitchell and Chretien's motions for summary judgment are meritorious, and they are GRANTED. The motion of the private defendants for judgment on the pleadings is DENIED.

IT IS SO ORDERED.