856 F.2d 196
 1988-2 Trade Cases 68,224
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lester W. SMITH and Western Reserve Group, Inc., Plaintiffs-Appellants,
v.
COMBUSTION ENGINEERING, INC., et al. Defendants-Appellees.
 Nos. 87-3378, 87-3657.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1988.
 
 Before LIVELY, MERRITT and KRUPANSKY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 The plaintiffs appeal from a series of district court orders culminating in final judgment for all defendants. The plaintiffs sought damages for alleged civil rights and antitrust violations in a complaint containing three counts and eighty numbered paragraphs.
 
 I.
 
 2
 According to the complaint the plaintiff Smith who was formerly an officer of C-E Cast Equipment, became a shareholder, director and president of Western Reserve Group, Inc. two years after leaving C-E Cast Equipment. Sometime thereafter the defendant Kavanagh, who was in charge of the replacement parts division of C-E Cast Equipment, discovered that one of its customers had found a new supplier for replacement parts formerly furnished to it by C-E Cast Equipment. Kavanagh hired Niam Investigations to determine the circumstances surrounding the customer's decision to find another supplier. The investigation implicated Smith and Western Reserve Group. Kavanagh and another person allegedly working for C-E Cast Equipment gave information to a state prosecutor's office concerning suspected criminal activity by Smith and Western Reserve Group that provided the basis for a search warrant for Smith's residence. As an incident to the search, officers seized property belonging to Smith and Western Reserve Group.
 
 
 3
 Thereafter Smith was indicted on the basis of grand jury testimony of Kavanagh and Edward Niam and evidence seized during the search. The four-count indictment charged Smith with theft or conversion of services, criminal simulation and possession of criminal tools. After first pleading not guilty, Smith later entered into a plea agreement with the state prosecutor by which he pled guilty to the misdemeanor charge of receiving stolen property of a value of less than $150, a lesser included offense to one of the indictment counts, and agreed to plead guilty on behalf of Western Reserve Group to the criminal simulation charge, a fourth degree felony. Smith received a suspended sentence and fine and was placed on one year's probation. Western Reserve Group was fined $5,000 on a guilty plea entered on its behalf by Smith. A condition of Smith's probation was that he would pay to Combustion Engineering, Inc., the corporate parent of C-E Cast Equipment, the sum of $25,000. Subsequently, Smith signed a covenant not to compete with Combustion Engineering for three years in exchange for an agreement to cancel payment of the unpaid portion of the $25,000 at the end of the three-year period.
 
 
 4
 The complaint alleged that the search and seizure conducted at the defendants' instigation violated Smith's Fourth Amendment rights, and sought damages pursuant to 42 U.S.C. Sec. 1983. The complaint also sought treble damages under the Sherman Act, alleging that the defendants intended to destroy Western Reserve Group and eliminate it as a competitor for replacement parts by causing the investigation and resulting seizure of its property. It further charged that the defendants conspired with Niam Investigations and the prosecutor's office to bring about the indictment and prosecution of Smith and ultimately to coerce his guilty plea and covenant not to compete, all in violation of the antitrust laws.
 
 II.
 
 5
 The district court granted the defendants' motion to dismiss the civil rights claim, brought pursuant to Sec. 1983, on the basis of limitations. The complaint charged that the defendants violated the plaintiffs' civil rights by engaging in "tortious conduct and acts in concert or conspiracy with persons acting under color of state law...." More specifically, the complaint alleged that Kavanagh executed a defective affidavit for a search warrant that resulted in an unreasonable search of Smith's residence and seizure of property of Smith and Western Reserve Group. The search occurred on December 8, 1981, and the complaint was filed on November 18, 1985.
 
 
 6
 Applying Wilson v. Garcia, 471 U.S. 261 (1985), and Mulligan v. Hazard, 777 F.2d 340 (6th Cir.1985), cert. denied, 476 U.S. 1174 (1986), the district court held that the civil rights action was time-barred. In Wilson v. Garcia, the Supreme Court directed that all Sec. 1983 actions be characterized as personal injury actions for limitations purposes as a matter of federal law. This leaves "[o]nly the length of the limitations period, and closely related questions of tolling and application" to be governed by state law. 471 U.S. at 269 (footnote omitted). In Mulligan v. Hazard this court noted that Ohio has two statutes of limitations that arguably might be applied to Sec. 1983 actions. There is a two-year statute of limitations for actions to recover for bodily injuries. Ohio Rev. Code Sec. 2305.10. There is also a one-year statute that applies to actions for libel, slander, assault, battery, malicious prosecution, false imprisonment and malpractice. Ohio Rev. Code Sec. 2305.11. The court then determined that the one-year Ohio limitations period should apply to Sec. 1983 actions and that Wilson v. Garcia should be applied retroactively. 777 F.2d at 343-44.
 
 
 7
 Mulligan v. Hazard has been criticized as failing to follow the mandate of Wilson v. Garcia by not selecting the Ohio statute of limitations that is specifically applicable to claims based on bodily injury. This court recently granted a petition to rehear en banc a decision in which the panel followed Mulligan v. Hazard and applied the Ohio one-year statute of limitations period in a Sec. 1983 action. Browning v. Pendleton, 6th Cir. No. 86-4123, decided and filed April 8, 1988; order vacating decision and restoring case to docket as a pending appeal, June 20, 1988.
 
 
 8
 Even if this court should conclude upon rehearing that Mulligan v. Hazard was incorrectly decided insofar as it selected Ohio's one-year statute of limitations rather than the two-year statute, such a decision would not benefit the plaintiffs. The plaintiffs waited until nearly four years after their alleged Sec. 1983 cause of action accrued before filing their complaint. As the Mulligan court pointed out, Ohio's catch-all four-year statute of limitations, Ohio Rev. Code Sec. 2305.09(D), does not apply to Sec. 1983 actions. 777 F.2d at 343 n. 4.
 
 
 9
 The plaintiffs also contend that the defendants were guilty of a continuing violation that did not end until January 13, 1984 when the guilty pleas were entered. However, in this argument the plaintiffs confuse a continuing violation with the extended effects of a discrete wrongful act. See United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). The district court did not err in granting the motion to dismiss Count I, the civil rights claim.
 
 III.
 
 10
 Counts II and III separately alleged violations of Sections 1 and 2 of the Sherman Act on behalf of the plaintiffs Western Reserve Group, Inc. and Lester W. Smith respectively. These counts charged the defendants with contracting with Niam Investigations with "a specific intent to acquire monopoly power in restraint of trade and to control price and to foreclose competition in the United States" with respect to replacement parts for equipment manufactured and sold by the defendants Combustion Engineering, and C-E Cast Equipment. These charges related to the search of Smith's residence and seizure of his and Western Reserve Group's property and subsequent actions of various defendants in connection with the indictment of Smith by the state grand jury.
 
 
 11
 The district court granted the defendants' motion for summary judgment on Counts II and III after finding that the actions of the defendants upon which the antitrust claims were based are protected by the Noerr-Pennington doctrine. This rule of law, explained in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers v. Pennington, 381 U.S. 657 (1965), holds that concerted efforts to influence public officials are shielded from the Sherman Act regardless of intent or purpose. This is true even though these efforts have as their sole purpose the destruction of others as competitors. Noerr, 365 U.S. at 138; Pennington, 381 U.S. at 670.
 
 
 12
 In its unpublished opinion, the district court wrote:
 
 
 13
 A review of the record shows that any harm that resulted to plaintiffs as a legitimate competitor at C-E Cast stemmed from the investigation, search and prosecution of plaintiffs. The investigation, search and prosecution was a result of C-E Cast's desire to protect what it, rightly or wrongly, believed to be its own product or trade secret. The Noerr-Pennington doctrine immunizes from antitrust liability attempts to influence the legislative process, administrative agencies or the courts. See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). Thus, the actions of the related defendants here are precisely those which fall under the Noerr-Pennington doctrine. For those reasons, the Court does not believe that questions concerning the legitimacy of plaintiff Western Reserve Group, Inc. as a competitor of C-E Cast and the availability of C-E Cast's drawing raise an issue of material fact. As to plaintiff's claims of conspiracy between the defendants and unnamed co-conspirators, the plaintiff has alleged no set of facts that would remove the defendants' conduct from the shield of the Noerr-Pennington doctrine.
 
 
 14
 In its most recent decision applying Noerr-Pennington, the Supreme Court denied antitrust immunity. See Allied Tube & Conduit Corp. v. Indian Head, Inc., --- U.S. ----, 108 S.Ct. 1931 (1988). In Allied Tube a private, voluntary organization that publishes product standards and fire codes voted at a "packed meeting" to exclude a particular product from a code in response to a conspiracy among manufacturers of a competing product. When sued, one of the conspiring manufacturers claimed antitrust immunity on the theory that the association was "akin to a legislature" and that its activities were "consistent with acceptable standards of political action." Id. at 1936. While reaffirming that "[c]oncerted efforts to restrain or monopolize trade by petitioning government officials are protected from antitrust liability" under the Noerr-Pennington doctrine, id., the Supreme Court agreed with the court of appeals that the association should not be treated as a " 'quasi-legislative' body." Id. at 1937. The Court cautioned that its decision "depends on the context and nature of the activity." Id. at 1941 n. 10. Allied Tube does not speak to the present case, where the defendants resorted to the courts.
 
 
 15
 The district court also denied the plaintiffs' contention that the defendants' conduct came within the "sham exception" to the Noerr-Pennington doctrine. The district court rejected this argument holding that the defendants could not be found to have fostered a baseless prosecution since they prevailed in their position when the plaintiffs pled guilty. The district court relied principally on Potters Medical Center v. City Hospital Ass'n, 800 F.2d 568, 578 (6th Cir.1986), in which this court held that a defendant's activities against a competitor could not be considered a sham where the defendant's position prevailed.
 
 
 16
 In concluding that the defendants' activities in the present case were of the type Noerr-Pennington is designed to shield, the district court adopted the following language in Potters:
 
 
 17
 Without a doubt, the intention to harm a competitor is not sufficient to make litigation or administrative proceedings a sham. The anticompetitive motive is the very matter protected under Noerr-Pennington. Rather, the requisite motive for the sham exception is the intent to harm one's competitors not by the result of the litigation but by the simple fact of the institution of litigation."
 
 
 18
 Potters, 800 F.2d at 579, quoting MCI Communications Corp. v. American Telephone & Telegraph Co., 708 F.2d 1081, 1156 (7th Cir.1983), cert. denied 464 U.S. 891 (1983).
 
 
 19
 Summary judgment was properly granted on the basis of Noerr-Pennington. We have carefully considered all of the plaintiffs' remaining arguments, many relating to procedural matters within the trial court's discretion, and find them to have no merit.
 
 
 20
 The judgment of the district court is affirmed.