Terry Ann JOHNSON and Charles Ihlenfeld, Plaintiffs,

v.

Michael G. CULLEN, Wayne Ihlenfeld, Kenneth Whaley, and William Jones, Defendants.

Civil Action Nos. 95–287, 95–500 MMS.

United States District Court, D. Delaware.

April 26, 1996.

Timothy M. Rafferty, Hockessin, Delaware, for plaintiff Terry Ann Johnson.

David P. Buckson, Camden, Delaware, for plaintiff Charles Ihlenfeld.

E. Scott Bradley, of Young, Conaway, Stargatt & Taylor, Georgetown, Delaware, for defendants Michael G. Cullen and Wayne Ihlenfeld.

Allan Wendelburg, and Colleen D. Shields, of Wendelburg, McCullough & McKenty, P.A., Wilmington, Delaware, for defendants Kenneth Whaley and William Jones.

*OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiffs Terry Ann Johnson ("Johnson") and Charles Ihlenfeld ("C. Ihlenfeld") have each filed civil rights complaints under 42 U.S.C. § 1983 alleging violations of their Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution. Because each complaint is based on the same factual transactions and occurrences, the Court consolidated the cases on October 27, 1995. Docket Item ("D.I." 28).

Before the Court are defendants Michael G. Cullen ("Cullen") and Wayne Ihlenfeld's ("W. Ihlenfeld") motions to dismiss each of the complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. D.I. 40, 42. Defendants Kenneth Whaley ("Whaley") and William Jones ("Jones") have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). D.I. 60. All of these motions are grounded on plaintiffs' alleged failure to timely file their complaints within the applicable statutory period of limitations.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Court will grant defendants' motions to dismiss and motion for summary judgment.

## II. FACTUAL BACKGROUND

The following facts are taken as true and viewed in the light most favorable to plaintiffs. On or about December 31, 1992, W. Ihlenfeld and his attorney, Cullen, filed an action in the Court of Common Pleas of Chester County, Pennsylvania, requesting the seizure of certain items of personal property belonging to the plaintiffs. Complaint of C. Ihlenfeld, D.I. 1, CA No. 95–500; Complaint of Johnson, D.I. 1, CA No. 95–287.[1] According to plaintiffs, neither of them was served with notice of a hearing on the writ of seizure. *Id.* at ¶ 8. In addition, plaintiffs allege that Cullen and W. Ihlenfeld knowing-

---

1. Because both Complaints allege substantially the same sets of facts, the Court will hereinafter cite, where possible, only to the earlier filed Complaint, *i.e.*, that of Johnson, for purposes of convenience.

ly and intentionally misrepresented to the Court of Common Pleas that notice of the hearing had been served on plaintiffs. *Id.* at 9. The court granted a writ of seizure on February 16, 1993, authorizing seizure of, *inter alia,* plaintiffs' 1989 Ford pickup truck and 1981 Gore horse trailer. *Id.* at ¶¶ 6–7.

Because the property to be seized was located in Delaware, Cullen and W. Ihlenfeld, armed with their writ, contacted Sheriff Whaley and Deputy Sheriff Jones of Sussex County, Delaware, to aid in the execution of the Pennsylvania court order. *Id.* at ¶ 14. After receiving cash consideration for assistance in executing the writ, Whaley accompanied W. Ihlenfeld to the Harrington County Fairgrounds in Kent County, Delaware, where the subject property was seized without incident. *Id.* at 16. Ultimately, the writ of seizure was vacated and the property was returned to the plaintiffs on August 24, 1993. Complaint of C. Ihlenfeld, CA No. 95–500, D.I. 1 at ¶ 19; Answer Brief of Johnson to the Motion to Dismiss, D.I. 57 at 4.

In Count III of the complaints, plaintiffs also allege that defendants Cullen and W. Ihlenfeld made false statements to the IRS about plaintiffs' tax returns. D.I. 1 at ¶ 22–23. Plaintiffs allege that these statements were made for the sole purpose to harass and interfere with plaintiffs' ability to pursue a remedy against defendants for their seizure of plaintiff's property. *Id.*

## III. ANALYSIS

### A. Standards of Review

■ The purpose of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or to decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Proce-*

*dure* § 1356 at 294 (2d ed. 1990). When considering a motion to dismiss, the Court should read the complaint generously, accept all of the allegations contained therein as true, and construe them in a light most favorable to the plaintiffs. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court will dismiss the complaint only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

■ Similarly, at summary judgment, the non-moving party's allegations must be taken as true and, if those allegations conflict with those of the movant, the former must receive the benefit of the doubt. *Valhal Corp. v. Sullivan Assoc., Inc.,* 44 F.3d 195, 200 (3d Cir.1995) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). Under the Federal Rules of Civil Procedure, the Court shall grant summary judgment if it determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If the facts are undisputed, and the issues presented are legal, rather than factual, the case may well be suited for resolution by judgment as a matter of law. *Id.; Associated Hardware Supply Co. v. Big Wheel Distrib. Co.,* 355 F.2d 114, 119 (3d Cir.1966).

### B. The Statute of Limitations Defense

■ Both sets of defendants argue that neither of plaintiffs' complaints was timely filed and that this section 1983 action is barred by the applicable statute of limitations.[2] Because 42 U.S.C. § 1983 does not

---

2. One normally raises the statute of limitations as an affirmative defense pursuant to Fed. R.Civ.P. 8(c). This rule provides, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively ... [the] statute of limitations ... and any other matter constituting an avoidance or affirmative defense." While it is generally true that an affirmative defense that has not been pleaded is deemed waived, *see Charpentier v.*

*Godsil,* 937 F.2d 859, 864 (3d Cir.1991), such a failure does not automatically constitute waiver of the defense when the policy behind the rule is not violated. *Id.; Grant v. Preferred Research, Inc.,* 885 F.2d 795, 797–98 (11th Cir.1989); *Bull's Corner Restaurant v. Director of the Fed. Emergency Management Agency,* 759 F.2d 500, 502 (5th Cir.1985); *accord,* 2A Moore's Federal Practice 8.27[3] at 8–170–73 (1992); 5 Wright &

have an explicit limitations period, the applicable Delaware personal injury statute of limitations governs this section 1983 claim. *See Wilson v. Garcia,* 471 U.S. 261, 268–77, 105 S.Ct. 1938, 1942–48, 85 L.Ed.2d 254 (1985) (holding that the state's personal injury statute of limitations should be applied for claims under section 1983); *Carr v. Town of Dewey Beach,* 730 F.Supp. 591, 602 (D.Del. 1990) (same). All parties in this litigation have agreed that the Court should apply Delaware's two-year limitation period pursuant to 10 *Del.C.* § 8119 [3] to this section 1983 action. D.I. 41 at 8; D.I. 57 at 6; D.I. 61 at 67; D.I. 65 at 4. *See Owens v. Okure,* 488 U.S. 235, 240, 109 S.Ct. 573, 577, 102 L.Ed.2d 594 (1989) ("§ 1983 claims are best characterized as personal injury actions") (citation omitted).

■ Although state law determines the applicable limitation period for claims under section 1983, federal law determines the date of accrual of a section 1983 cause of action. *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir.1991). The statute of limitations begins to run when the plaintiffs' cause of action accrues. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 (3d Cir.1994). A section 1983 claim accrues when a plaintiff knows or has reason to know of the injury that forms that basis of his or her cause of action. *Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 197 n. 16 (3d Cir.1984); *see also Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982).

■ Plaintiff Johnson filed her complaint on May 9, 1995; plaintiff C. Ihlenfeld filed his on August 11, 1995. The truck and trailer were seized by the defendants on Febru-

ary 17, 1993. The record is clear that Johnson became aware that her property was seized by 12 noon on that same day. D.I. 62 at A6–10. C. Ihlenfeld is shown to have been aware of the seizure by, at the latest, March 4, 1993. D.I. 70 at 12. Neither plaintiff contests these facts; nor do they contend that their complaints were filed within two years of the above dates. However, plaintiffs do assert that because defendants retained the property until the writ of seizure was vacated on August 24, 1993, there was a "continuing violation" of their constitutional rights that extended the time for filing their complaints until August 24, 1995. Because their complaints were filed before that date, plaintiffs maintain that their actions were timely filed under 10 *Del.C.* § 8119.

■ The Third Circuit Court of Appeals has recognized that under certain circumstances, certain types of violations are continuing in nature. *See West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995) (Title VII discrimination). To establish that a claim falls within the continuing violations theory, plaintiffs must do two things: First, they must demonstrate that at least one act occurred within the filing period. *Id.* Next, they must show "more than the occurrence of isolated or sporadic acts...." *Id.* (quoting *Jewett v. International Tel. & Tel. Corp.,* 653 F.2d 89, 91 (3d Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981)).

In support of their argument, plaintiffs have cited two district court cases in which courts found the defendants had engaged in continuing wrongful activity. In *Curcio v. Chinn Enter. Inc.,* 887 F.Supp. 190 (N.D.Ill. 1993), plaintiffs brought Title VII and related

Arthur R. Miller § 1278 at 494 (1990). The reason for this rule is to put plaintiff on notice, well in advance of trial, that a defendant intends to pursue a defense that is in the nature of an avoidance. *See Blonder–Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971). If the defendants raise "the issue at a pragmatically sufficient time," and the plaintiffs were not prejudiced in their ability to respond, there is no waiver. *Charpentier,* 937 F.2d at 864.

Here, defendants Cullen and W. Ihlenfeld raised their statute of limitations defense in their Rule 12(b)(6) motions, which served as responses to plaintiffs' complaints. Plaintiffs were thus put

on notice of this defense while this suit was still in its infancy, and cannot complain of unfair surprise or prejudice. Because plaintiffs were afforded ample notice of the statute of limitations issue, and because they have not argued that such a defense has been waived, the Court will address the merits of this defense.

3. The Delaware statute of limitations provides:

No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained.... 10 *Del.C.* § 8119.

intentional infliction of emotional distress claims against their employer for repeated acts of sexual harassment by a supervisor. The court found that because the discriminatory acts were repeatedly committed on a continuing basis, the statute of limitations did not begin to run until the tortious acts ceased. *Id.* at 195. Because the supervisor's actions continued up to the filing of the plaintiffs' claim, the court found the complaint was timely filed. *Id.*

Similarly, in *Fletcher v. Florida*, 858 F.Supp. 169, 171 (M.D.Fla.1994), the state-run social service agency issued an order removing minor children from the custody of their mother. *Id.* at 171. The children were eventually returned to their mother, who sued the state under 42 U.S.C. § 1983 for various civil rights violations. *Id.* at 170. The court held that because the minor children were continuously kept separated from each other and their mother, the statute of limitations did not accrue until the day when the children were returned to the mother. *Id.* at 171.

These cases stand in direct contrast to a case decided by the Third Circuit Court of Appeals that is analogous to the instant case. In *Sandutch v. Muroski*, 684 F.2d 252 (3d Cir.1982), the plaintiff, a convicted, incarcerated criminal, filed a civil rights action alleging that the prosecution violated his civil rights by obtaining an inculpatory but fraudulent affidavit from one of plaintiff's co-conspirators. *Id.* at 253. Plaintiff alleged that his incarceration was a continuing tort, because as long as he was incarcerated, he continued to suffer the injury of false imprisonment. *Id.* at 254. Looking to the state's applicable statute of limitations for false imprisonment, the court concluded that a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981)). The court found that plaintiff alleged only a single wrongful act by the prosecution, and was suffering continuing ill effects from that one act. *Id.* In short, the court held that the cause of action accrued when the allegedly fraudulent statement was obtained. *Id.*

The *Sandutch* decision parallels a line of cases involving civil rights violations centering on property interests. Such cases have uniformly held that in section 1983 cases concerning deprivation of one's property, the violation of one's civil rights accrues when the property is seized. For example, in *Shannon v. Recording Indus. Ass'n of Am.*, 661 F.Supp. 205 (S.D.Ohio 1987), plaintiffs brought a civil rights action alleging that F.B.I. agents caused the issuance of a search warrant knowing that the warrant was based on misstatements of fact and inadequate investigation. *Id.* at 208. Agents executing the warrant seized sound recordings, equipment, and business records from plaintiffs' residence and business. *Id.* Eventually, as in the case *sub judice,* their property was returned to them. *Id.* at 210. The *Shannon* plaintiffs contended "that the illegal conduct complained of continued from the date of the execution of the search warrant until … their property was returned to them" as the result of a separate lawsuit. *Id.* Stated differently, plaintiffs argued that defendants' continued unlawful retention of their property constituted a continuing violation. *Id.*

The court disagreed with this assertion, holding that the statute of limitations began to run on the date of the wrongful appropriation. *Id.* at 210–11 (citing *Altair Corp. v. Pesquera De Busquets*, 769 F.2d 30, 32 (1st Cir.1985)). Because the injury arose from the unlawful seizure of the property, the retention by the defendants of the seized property was a mere consequence of the alleged illegal seizure. *Id.* at 211. Therefore, the court reasoned, any injuries suffered by the plaintiffs stemmed from the initial, single, unlawful act. *Id.* Because the plaintiffs knew or had reason to know of the alleged deprivation of property when the seizure occurred, the court found that the applicable statute of limitations commenced running on the date of the seizure. *Id.* at 210–11; *accord Schaefer v. Stack*, 641 F.2d 227 (5th Cir.1981) (where property was seized, then later returned, statute of limitations started running on the date of the seizure); *Kittrell v. City of Rockwall*, 526 F.2d 715 (5th Cir.) (period of limitations started on the date of wrongful appropriation of land), *cert. denied*, 426 U.S. 925, 96 S.Ct. 2636, 49

L.Ed.2d 379 (1976); *Triestman v. Probst,* 897 F.Supp. 48 (N.D.N.Y.1995) (period of limitations started on the date on which property was seized pursuant to warrant, not when plaintiff learned that the warrant was unlawfully obtained).

This Court agrees with the reasoning underlying the above cases and is unaware of cases holding otherwise. The alleged deprivation of property in this case involved a singular act, *i.e.,* the seizure of property pursuant to a writ later adjudged invalid. Plaintiffs knew immediately (or at least fairly immediately) that the seizure occurred and that the process of obtaining the writ may have been infirm. Although plaintiffs were deprived of their property until it was returned to them, that was the continual ill effect of the original act of seizure. It was not a series of repetitive or ongoing violations. Consequently, the Court holds that the cause of action arising from defendants' seizure of plaintiffs' property accrued on the date of the alleged wrongful appropriation, or, at the latest, by March 4, 1993, when both plaintiffs were aware of the defendants' act. Because plaintiffs failed to file their complaints within the two year statutory period, their complaints are barred by 10 *Del.C.* § 8119, the applicable statute of limitations.

## C. Plaintiffs' Count III

Plaintiffs both allege in their complaints that the various counts in their actions arise under several United States Constitutional provisions and under 42 U.S.C. § 1983. Complaint of C. Ihlenfeld, D.I. 1, ¶ 6, CA No. 95–500; Complaint of Johnson, D.I. 1, ¶ 5, CA No. 95–287. In Count III of their complaints, plaintiffs allege that defendants Cullen and W. Ihlenfeld violated plaintiffs' civil rights under section 1983 by making false statements and providing damning misinformation to the Internal Revenue Service ("IRS"). These statements were allegedly made to induce the IRS to initiate an investigation of plaintiffs' tax returns and to harass and interfere with plaintiffs' pressing of their claims against defendants.

### 1. 42 U.S.C. § 1983

 Section 1983 of Title 42 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. The statute, by its terms, creates no substantive rights; rather, it "merely provides remedies for deprivations of rights established elsewhere." *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir.) (quoting *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985) (plurality opinion)), *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). Thus, a plaintiff claiming a violation of rights under section 1983 is required to demonstrate: (1) a person deprived him of a federal right; and (2) the person acted under color of state law. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980)).

 Defendants argue that plaintiffs have not demonstrated that the defendants were acting under color of state law when they allegedly violated plaintiffs' civil rights. In *Mark,* the Third Circuit Court of Appeals reiterated the United States Supreme Court's pronouncement that in cases brought under section 1983, "under color of" state law is treated as equivalent to the "state action" requirement of the Fourteenth Amendment. *Mark,* 51 F.3d at 1141 (citing *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966)). The court of appeals further explained that there are three discrete tests to determine whether there has been state action. The first test determines whether the private entity exercises powers that are traditionally the *exclusive* prerogative of the state. *Mark,* 51 F.3d at 1142. The second test addresses whether the private entity has acted in concert or with the help of state officials. *Id.* Finally, the last inquiry involves situations in which

"the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (citations omitted).

■ Plaintiffs have not addressed the "under color of" state law requirement in their briefs nor in their complaints. On the state of the current record, the Court cannot but conclude that, for purposes of the civil rights violations alleged under 42 U.S.C. § 1983, defendants Cullen and W. Ihlenfeld acted solely as private parties and do not meet the "under color of" state law requirement under any of the above tests. Undaunted, however, plaintiffs raise two alternative arguments against dismissal of Count III. First, plaintiffs argue that defendants' conduct alleged in Count III constitutes a violation of 18 U.S.C. § 1001,[4] making false statements in a matter involving a federal agency, and 26 U.S.C. § 7206,[5] fraud involving federal tax matters. Second, plaintiffs maintain that even if there is no federal question jurisdiction for Count III, the Court should exercise supplemental jurisdiction over this claim.

## 2. Plaintiffs' Alternative Arguments Against Dismissal of Count III

■ Plaintiffs do not supply any authority for their contention that they should be allowed, in a private civil action, to sue defendants pursuant to 18 U.S.C. § 1001 and 26 U.S.C. § 7206, federal criminal code provisions. However, unless there is clear con-

gressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute. *Federal Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137–38 (4th Cir.1987) (no civil cause of action where no affirmative indication of Congressional intent to furnish a civil remedy); *Bell v. Health–Mor, Inc.*, 549 F.2d 342 (5th Cir.1977); *Barrett v. City of Allentown*, 152 F.R.D. 50, 55 (E.D.Pa.1993); *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097 (D.Colo.1986); *National Football League v. Governor of the State of Delaware*, 435 F.Supp. 1372, 1388 (D.Del.1977). "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club*, 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981).

■ This Court has been unable to locate authority which would imply a civil cause of action for violations of these federal criminal code provisions. There is, however authority holding to the contrary. *See Reeves*, 816 F.2d at 137 (4th Cir.1987) (finding no basis to imply a civil cause of action under 18 U.S.C. § 1001); *Rosado v. Curtis*, 885 F.Supp. 1538, 1541 (M.D.Fla.1995) (same); *Williams v. McCausland*, 791 F.Supp. 992 (S.D.N.Y.1992) (same). The Court agrees with the reasoning applied in this line of cases and holds that there is no private right of action available to plaintiffs under 18 U.S.C. § 1001 or 26 U.S.C. § 7206.

Plaintiffs' remaining argument, that this Court should exercise discretionary supple-

---

**4.** Section 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1001.

**5.** Section 7206 provides in relevant part:

Any person who—

... (2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the

internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; or ...

(5)(B) Receives, withholds, destroys, mutilates, or falsifies any book, document, or record, or makes any false statement, relating to the estate or financial condition of the taxpayer or other person liable in respect of the tax;

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

26 U.S.C. § 7206.

mental jurisdiction over Count III, also fails to carry the day. The Court's ability to exercise supplemental jurisdiction is granted by 28 U.S.C. § 1367, which reads, in part,

(a) ... in any civil action of which district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution ...

(c) The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367. Under subsection (c) of this statute, Congress has granted the district courts discretion to decline to exercise jurisdiction over non-federal claims over which the court may have had supplemental jurisdiction under section (a).

 The Court of Appeals for the Third Circuit has stated that when determining whether to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). Moreover, a federal court should avoid needless decisions of state law both as a matter of comity and to promote justice between the parties. If the federal claims are dismissed prior to trial, even though not insubstantial in a jurisdictional sense, the non-federal claims should be likewise dismissed. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) (citing *United Mine Workers*, 383 U.S. at 726–27, 86 S.Ct. at 1139–40)). Because the Court is dismissing the federal claims, and because this case is only at the motion to dismiss and summary judgment stage, the Court finds no overriding interest of judicial economy or convenience. Nor is there any apparent unfairness in dismissal, without prejudice, of the non-federal claims. The Court, in the exercise of its discretion under 28 U.S.C. § 1367(c)(3), will accordingly "decline to exercise supplemental jurisdiction" over the plaintiffs' Count III because the Court will "dismiss all claims over which it [had] original jurisdiction." *See* 28 U.S.C. § 1367(c).

## IV. CONCLUSION

For the above stated reasons, these consolidated actions are barred under 10 *Del.C.* § 8119 for failure to timely file the complaints. The Court will grant defendants Cullen and W. Ihlenfeld's motions to dismiss both Counts I and II of both complaints and defendants Whaley and Jones' motion for summary judgment. Having disposed of plaintiffs claims arising under federal law, the Court will decline to exercise supplemental jurisdiction over Count III and dismiss that claim without prejudice.