# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NEW CASTLE COUNTY, )
)
Plaintiff, )
v. ) C.A. No. N24C-09-072 PRW CCLD
)
HERSHA HOSPITALITY )
MANAGEMENT, L.P., )
)
Defendant. )

Submitted: April 10, 2025
Decided: April 25, 2025

*Upon Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim,*
**DENIED.**

*Upon Plaintiff's Motion to Strike Defendant's Twenty-Fifth Affirmative Defense,*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

Sean A. Meluney, Esquire, William M. Alleman, Jr., Esquire (*argued*), Stephan A. Spence, Esquire, and Matthew D. Beebe, Esquire, MELUNEY ALLEMAN & SPENCE, LLC, Lewes, Delaware; Brian M. Gottesman, Esquire, GABELL BEAVER LLC, WILMINGTON, DELWARE, *Attorneys for Plaintiff New Castle County*.

Aaron E. Moore, Esquire (*argued*), and M. Claire McCudden, Esquire, MARSHALL DENNEHEY, P.C., Wilmington, Delaware, *Attorneys for Defendant Hersha Hospitality Management, L.P.*

**WALLACE, J.**

Before the Court is Plaintiff New Castle County's Motions to Dismiss an Amended Counterclaim and to Strike an Affirmative Defense. For the reasons explained below, those motions are **DENIED**.

## I. THE PARTIES

Plaintiff New Castle County ("NCCo" or "County") is a political subdivision of the State of Delaware.[1] Defendant Hersha Hospitality Management, L.P., is a Pennsylvania limited partnership.[2]

## II. FACTUAL BACKGROUND

### A. THE HOPE CENTER AND THE PMA

In December 2020, the County bought the Hope Center at auction from Hersha Hospitality Trust, an entity related to Hersha.[3] After the sale, NCCo stopped operating the Hope Center as a hotel and reopened it as a shelter for those unhoused.[4] At the same time, the parties executed the Property Management Agreement ("PMA"), under which Hersha agreed to operate the Hope Center.[5] The PMA's term

---

[1] Complaint (hereafter "Compl.") ¶ 8, (D.I. 1); Amended Answer to Complaint with Affirmative Defenses (hereafter "Am. Answer") ¶ 8 (D.I. 27).

[2] Am. Answer ¶ 6.

[3] Compl. ¶¶ 13-15; Am. Answer ¶¶ 13-16. The Hope Center is located at 365 Airport Road, Wilmington, Delaware 19720. Compl. ¶ 8; Am. Answer ¶ 8.

[4] Compl. ¶¶ 17-18; Am. Answer ¶¶ 17-18.

[5] Compl. ¶¶ 2, 18-30; Am. Answer ¶¶ 18-30; *see* Compl., Ex. 1 (hereafter "PMA") at Recitals (Hersha agreed "to manage and operate the [Hope Center], in accordance with the terms and conditions of" the PMA). The PMA extensively details the parties' obligations regarding the Hope Center's operation and upkeep. *See id.* §§ 3, 5, 6, 8. While those managerial obligations are central to NCCo's claim, they are not implicated in Hersha's Counterclaim or twenty-fifth Affirmative

- 1 -

ran for five years, "unless sooner terminated in accordance with the provisions of this Agreement[.]"[6] Several provisions related to early termination are relevant to resolving the County's present motions.

Central to the parties' dispute is Section 17.1. That provides in relevant part: "Upon any termination of this Agreement by [Hersha] pursuant to Section 16.1A, B, or E, or by [NCCo] pursuant to Sections 14.1 or 14.2 . . . [NCCo] shall . . . pay to [Hersha] a termination fee."[7]

Section 14.1 allows NCCo to terminate the PMA "in connection with any sale or transfer of the [Hope Center] to a bona-fide third party[.]"[8] Section 14.2 authorizes NCCo to terminate the PMA if "no portion of the [Hope Center] is used as a shelter, hotel, motel, or lodging establishment."[9] There are no allegations that NCCo sold the Hope Center or stopped using it as a shelter for those in need.[10]

Section 16.1(A) gives Hersha a right to terminate the PMA if NCCo fails to

---

Defense. *See* Compl. ¶¶ 20-30, 69-70, 75-80; Am. Answer at Twenty-Fifth Affirmative Defense; Counterclaim (hereafter "Countercl.") ¶¶ 1-9 (D.I. 27). Accordingly, the PMA's provisions related to the Hope Center's operation are irrelevant to resolving the motions and are omitted.

[6] PMA § 2.1.

[7] *Id.* § 17.1. Section 17.1 also provides the method of calculating the Termination Fee, depending on when the early termination occurs. *Id.* Relevant here is the clause which provides for a Termination Fee equal to "the average monthly 'Base Fee' paid or payable to Hersha with respect to the twelve (12) full calendar months immediately preceding the calendar month in which the effective date of the early termination occurs." Countercl. ¶¶ 2-3 (citing PMA § 17.1).

[8] PMA § 14.1.

[9] *Id.* § 14.2.

[10] *See generally* Compl.; Am. Answer; Countercl.

render "any amount required to be paid under the terms of [the PMA], or . . . to fund the Operating Account as required[.]"[11] Section 16.1(B) allows Hersha to terminate, "[i]f either party shall be in material default in the performance of its other obligations under [the PMA], and such default continues for a period of thirty (30) days after the written notice from the other party," unless the default cannot reasonably be cured within that timeframe.[12] Section 16.1(E) permits Hersha to terminate the PMA if NCCo "fails to approve any changes, repairs, alterations, improvements, renewals or replacements to the [Hope Center] which [Hersha] determines in its reasonable judgment are necessary[.]"[13]

Hersha's twenty-fifth Affirmative Defense cites Section 16.5 of the PMA.[14] Section 16.5 states, "[e]ach of the parties [to the PMA] irrevocably waives any right such party may have against the other party hereto at law, in equity or otherwise to any consequential damages, punitive damages, special or exemplary damages."[15]

**B. THE PARTIES' RELATIONSHIP BREAKS DOWN AND THE PMA IS TERMINATED.**

In early 2023, the parties' relationship began to breakdown over disputes

---

[11]    PMA § 16.1(A).

[12]    *Id.* § 16.1(B).

[13]    *Id.* § 16.1(E).

[14]    *See* Am. Answer at Twenty-Fifth Affirmative Defense.

[15]    PMA § 16.5.

concerning the Hope Center's operation.[16]  In May 2023, NCCo sent Hersha a "Notice of Material Default" which accused Hersha of breaching Sections 3.1 and 9.6 of the PMA (the "First Breach Letter").[17]  Hersha denies the First Breach Letter's allegations.[18]  In January 2024, NCCo sent Hersha a second letter asserting Hersha breached Sections 3.1 and 21.1 of the PMA (the "Second Breach Letter").[19]  Again, Hersha denies the Second Breach Letter's accusations.[20]

In February 2024, Hersha sent NCCo a letter responding to the Second Breach Letter (the "First Hersha Response").[21]  The First Hersha Response "put the County on notice that because Hersha was not in default of the PMA, if the County attempted to terminate the PMA, any such termination would be treated as a material breach of the PMA by the County."[22]  Hersha also reserved its right to seek remedies under the

---

[16]  Compl. ¶¶ 31-38; Am. Answer ¶¶ 31-38.

[17]  *See* Plaintiff New Castle County's Opening Brief in Support of its Motion to Dismiss Defendant/Counterclaim-Plaintiff's Amended Counterclaim and Motion to Strike Untimely Twenty-Fifth Affirmative Defense (hereafter "MTD"), Ex. A (hereafter "First Breach Letter") (D.I. 30); Compl. ¶ 32; Am. Answer ¶ 32.

[18]  Am. Answer ¶¶ 31-38.

[19]  *See* MTD, Ex. B (hereafter "Second Breach Letter"); Compl. ¶ 39; Am. Answer ¶ 39.

[20]  Am. Answer ¶¶ 40.

[21]  *See* Plaintiff New Castle County's Reply Brief in Support of Its Motion to Dismiss Defendant-Counterclaim Plaintiff's Amended Counterclaim and Motion to Strike Untimely Twenty-Fifth Affirmative Defense (hereafter "MTD Reply"), Ex. F (hereafter "First Hersha Response) (D.I. 36); Compl. ¶ 52; Am. Answer ¶¶ 48, 52.

[22]  Countercl. ¶ 5; *see* First Hersha Response ("there is no credible claim of default or breach advanced by the County. . . . Given the County has failed to identify any breach or default under the [PMA], please be advised that should the County attempt to terminate the [PMA], any such termination will be treated as a material breach of the [PMA] by the County[.]").

- 4 -

PMA in the First Hersha Response.[23]  Two days later, Hersha sent a second letter again preserving its rights under the PMA, "including its right to a termination fee as a result of the County's breach of the PMA by forcing Hersha out under the false pretense that Hersha had defaulted [(the "Second Hersha Response")]."[24]

The next week, NCCo sent a "NOTICE OF TERMINATION AND TRANSITION PLAN" to Hersha, purporting to terminate the PMA pursuant to Sections 16.1(B) and 16.2 (the "Termination Letter", collectively with the First Breach Letter and Second Breach Letter, the "NCCo Letters.").[25]  Hersha rejects the Termination Letter's effectiveness, because it was based on the flawed premise that Hersha defaulted under the PMA.[26]  Rather, Hersha maintains it "terminated the PMA pursuant to §16.1.B of the PMA because the County failed to perform its obligations owed to Hersha under the PMA, including forcing Hersha out under the false pretense that Hersha had defaulted on the PMA."[27]  Hersha cites its March 8 2024, response to the Termination Letter as evidence of its termination of the PMA, (the "Hersha Termination Response", collectively with the First Hersha Response

---

[23]  Countercl. ¶ 5; *see* First Hersha Response ("[Hersha] reserves the right to exercise all available remedies under the [PMA.]").

[24]  Countercl. ¶ 6; *see* MTD Reply, Ex. G (hereafter "Second Hersha Response").

[25]  MTD, Ex. C (hereafter "Termination Letter"); *see* Compl. ¶ 53; Am. Answer ¶ 53.

[26]  Am. Answer ¶¶ 53-55.

[27]  Countercl. ¶ 4.

and Second Hersha Response, the "Hersha Letters").[28]

The Hersha Termination Response denied the Termination Letter's allegations and rejected its purported cancellation of the PMA.[29] Hersha also demanded that the County cure its alleged breach of Section 16.1(B) of the PMA.[30] As part of that demand, Hersha informed NCCo that "the County did not have the right to terminate the PMA," because Hersha had not breached its obligations.[31]

The parties' relationship remained in uneasy limbo until NCCo ejected Hersha from the Hope Center in April 2024.[32] At that time, there was one year, seven months, and one week remaining of the PMA's term.[33] After Hersha's ouster, NCCo filed the instant suit.[34]

## C. PROCEDURAL HISTORY

NCCo initiated this litigation in September 2024 alleging Hersha breached the PMA.[35] Hersha filed its first Answer and Counterclaim the next month.[36] Hersha's

---

[28] *See id.* ¶ 6; MTD, Ex. D (hereafter "Hersha Termination Response").

[29] *See* Hersha Termination Response.

[30] Countercl. ¶ 6 (citing Hersha Termination Response).

[31] *Id.*; *see* Hersha Termination Response.

[32] *Id.* ¶ 7.

[33] *Id.*

[34] *See generally* Compl.

[35] *See* Compl. ¶¶ 75-80. In the alternative, NCCo alleges Hersha was "negligent and grossly negligent" in its management of the Hope Center. *Id.* ¶¶ 81-87.

[36] *See generally* Defendant Hersha Hospitality Management L.P.'s Answer with Counterclaim to Plaintiff's Complaint (hereafter "Answer") (D.I. 21).

original answer raised twenty-four affirmative defenses; none were related to Section 16.5 of the PMA.[37] After NCCo filed an initial Motion to Dismiss,[38] Hersha amended its Answer in December 2024.[39] The Amended Answer raised for the first time, an affirmative defense based on Section 16.5.[40] The Amended Answer also reasserted the Counterclaim, which seeks a "termination fee under § 17.1 of the PMA because the County wrongfully terminated the PMA."[41]

In response, NCCo filed the instant motions in January 2025.[42] The Motions argue that: (1) Hersha's Counterclaim fails to state a claim for a termination fee under the PMA;[43] (2) Hersha is not entitled to attorney's fees;[44] and (3) Hersha's twenty-

---

[37] *See id.* at 44-52.

[38] *See generally* Plaintiff's Motion to Dismiss Defendant's Counterclaim (D.I. 22).

[39] *See generally* Am. Answer. at Twenty-Fifth Affirmative Defense.

[40] *See id.*

[41] Countercl. ¶ 1.

[42] *See generally* MTD.

[43] MTD at 10-17.

[44] *Id.* at 17-19. Specifically, NNCo argues Hersha fails to "identif[y] any exception to the American Rule" entitling it to attorney's fees. *Id.* (citing *In re Del. Pub. Sch. Litig.*, 312 A.3d 703, 715 (Del. 2024) ("Delaware follows the 'American rule' in awarding attorneys' fees, which provides that a litigant must, himself, defray the cost of being represented by counsel.")). While Hersha invokes Section 5.1, 21.2, and 21.4 of the PMA, NCCo maintains none of those provisions grant Hersha attorney's fees in this case. *Id.* at 18-19 (citing PMA §§ 5.1, 21.1, 21.2, 21.4). Hersha's opposition brief does not respond to NCCo's attorney's fee arguments. *See generally* Defendant, Hersha Hospitality Management, L.P.'s Answering Brief in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim and Motion to Strike Twenty-Fifth Affirmative Defense (hereafter "MTD Opp'n") (D.I. 34). Failure to respond to an argument raised in a motion constitutes waiver. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999); *Greenfield for Ford v. Budget of Delaware, Inc.*, 2017 WL 5075372, at *4 (Del. Super. Ct. Oct. 31, 2017), *aff'd*, 211 A.3d 1087 (Del. 2019)). Hence, Hersha waived any opposition to NCCo's Motion to Strike the Counterclaim's request for attorney's fees.

fifth affirmative defense is untimely.[45] The motions have been fully briefed and the Court heard argument thereon earlier this month.[46] At oral argument, Hersha withdrew its request for attorneys' fees.[47]

## III. APPLICABLE LEGAL STANDARDS

On a Rule 12(b)(6) motion, the Court must:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the claimant would not be entitled to recover under any reasonably conceivable set of circumstances.[48]

The Court, however, "is not required to accept every strained interpretation of the allegations,"[49] and ignores conclusory allegations that lack factual support.[50]

A counterclaim is "a separate cause of action."[51] Therefore, when considering a motion to dismiss, the Court's review is generally limited to "the well-pleaded

---

[45] MTD at 19-21.

[46] D.I. 41.

[47] As noted just above, even had Hersha not expressly withdrawn its request for attorney's fees, its failure to respond to the County's arguments concerning attorney's fees constitutes a waiver. *See supra* n. 44.

[48] *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *3 (Del. Super. Ct. Aug. 7, 2019) (cleaned up).

[49] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[50] *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011).

[51] *Reybold Venture Group XI-A, LLC v. Atlantic Meridian Crossing, LLC*, 2009 WL 143107, at *2 (Del. Super. Jan. 20, 2009) (cleaned up).

allegations in the counterclaim."[52]  Yet—just as with a suit-initiating claim—the Court may consider "documents that are integral to or incorporated by reference in the counterclaim."[53]

Pursuant to Rule 12(f) "the Court 'may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'"[54]  The "standard for a motion to strike is similar to that for a motion to dismiss."[55]  Accordingly, when considering a motion to strike "the Court must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law."[56]

## IV.  DISCUSSION

### A. THE COUNTERCLAIM STATES A REASONABLY CONCEIVABLE CLAIM THAT THE COUNTY BREACHED THE PMA.

NCCo insists the Court should dismiss the Counterclaim, because it is based on the false premise that Hersha, not the County, terminated the PMA.[57]  It is

---

[52]  *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at *6 (Del. Super. Ct. Nov. 2, 2015) (citing *Solomon v. Pathe Communications Corp.*, 672 A.2d 35, 38-39 (Del. 1996)); *see Reybold Venture*, 2009 WL 143107, at *2 ("The Court must view the material factual allegations of the counterclaim as true for purposes of the motion to dismiss.").

[53]  *Id.* (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995)).

[54]  *Wellgistics, LLC v. Welgo, Inc.*, 2024 WL 4884886, at *7 (Del. Ch. Nov. 25, 2024) (quoting Super. Ct. Civ. R. 12(f)).

[55]  *Id.*

[56]  *Nichols v. Chrysler Group LLC*, 2010 WL 5549048, at *5 (Del. Ch. Dec. 29, 2010).

[57]  MTD at 10-16.

undisputed that if NCCo validly terminated the PMA, Hersha is not entitled to a termination fee and the Counterclaim fails.[58] To support its position that the County terminated the PMA, NCCo relies on the NCCo Letters, most importantly the Termination Letter.[59]

The Counterclaim specifically refutes NCCo's postulation—instead alleging "Hersha terminated the PMA pursuant to § 16.1.B of the PMA because the County failed to perform its obligations owed to Hersha under the PMA, including forcing Hersha out under the false pretense that Hersha had defaulted on the PMA."[60] To support that averment, Hersha relies on the Hersha Letters.[61]

---

[58]  Section 17.1 grants Hersha a termination fee, if NCCo terminates the PMA, only when that termination arises from the sale of the Hope Center to a third-party or the Hope Center ceasing to be used as a lodging establishment. *See* PMA §§ 14.1, 14.2, 17.1. No party alleges that NCCo sold the Hope Center or stopped using it as a shelter. *See generally* Compl.; Am. Answer; Countercl. Accordingly, if NCCo properly terminated the PMA, Hersha is not entitled to a termination fee.

[59]  *See* MTD at 10-16.

[60]  Countercl. ¶ 4.

[61]  *Id.* ¶¶ 5-6. There is some dispute regarding whether the Court can consider the NCCo Letters in ruling on the Motions given that the Counterclaim does not explicitly cite those documents. *See generally id.* A document is incorporated by reference into a pleading when the claimant "'expressly refers to and heavily relies upon [the] document in her [pleading] . . . this is true even where the document[] [is] not expressly incorporated or attached to the complaint." *Morrison v. Berry*, 191 A.3d 268, 275 n.20 (Del. 2018) (quoting *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012)). Arguably, the Counterclaim references the Termination letter when it alleges "the County wrongfully terminated the PMA prior to its expiration." Countercl. ¶ 1. Yet, Hersha's admittedly sparse Counterclaim does not rely on facts only drawn from the NCCo Letters. *See generally id.* ¶¶ 1-9. *See also Fortis Advisors LLC v. Allergan W.C. Holding Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019) (internal quotes omitted) (holding a document is considered integral to a claim, "if it is the source for the facts as pled in the" counterclaim). The Court need not address that issue, however, because even considering the NCCo Letters, the Counterclaim states a reasonably conceivable claim that the County breached the PMA under Delaware's deferential pleading standard.

To sustain a breach-of-contract claim, "the plaintiff must allege: '(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach.'"[62] Applying that formulation, this Court recently held a claimant "conceivably pleads breach of contract when alleging specific contractual obligations of the defendant, describes how defendant's conduct constituted a breach of those obligations, and articulates damages resulting from the breach."[63]

Hersha's Counterclaim does just that. First, the Counterclaim identifies the specific section of the PMA NCCo allegedly breached – Section 17.1.[64] Second, the Counterclaim describes how NCCo's conduct breached Section 17.1.[65] Finally, the Counterclaim articulates Hersha's claimed damages arising out of that alleged breach.[66] Put simply, Hersha's Counterclaim "is sufficient to 'put the opposing party on notice' as required to state a claim and survive a motion to dismiss."[67]

---

[62] *PVP Aston, LLC v. U.S. Bank National Association*, 2023 2023 WL 525059, at *8 (Del. Super. Jan. 24, 2023) (quoting *Buck v. Viking Hldg. Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Feb 22, 2021)).

[63] *Boissonneault*, 2024 WL 5055538, at *3 (internal citations omitted).

[64] *See* Countercl. ¶¶ 1-3 ("Hersha is entitled to recover a termination fee under § 17.1 of the PMA because the County wrongfully terminated the PMA prior to its expiration.").

[65] *Id.* ¶¶ 1, 4-6 (alleging "the County failed to perform its obligations owed to Hersha under the PMA, including forcing Hersha out under the false pretense that Hersha had defaulted on the PMA."), 8 (alleging NCCo's "termination was wrongful and constitutes a breach of the PMA.").

[66] *Id.* ¶¶ 2-3 (establishing the Hersha is entitled to a termination fee if it terminates the PMA under Section 16.1(B) of the PMA), 4 ("Hersha terminated the PMA pursuant to § 16.1.B. of the PMA.), 7 ("[i]n accordance with § 17.1, Hersha is entitled to a termination fee in the amount of $125,000.00.").

[67] *Patton v. Quality Enterprises, LLC*, 2023 WL 8803592, at *6 (Del. Super. Ct. Dec. 19, 2023) (quoting *Martinez v. E.I. DuPont De Nemours and Co., Inc.*, 82 A.3d 1, 15 (Del. Super. Ct. Dec.

While NCCo thinks otherwise,[68] Hersha made no admission that undermines its Counterclaim. It's true that "[v]oluntary and knowing concessions of fact made by a party during judicial proceedings" are typically "binding [] upon the party against whom they operate."[69] Even so, a Court always has the discretion to relieve a party from the conclusiveness of what might be deemed "judicial admissions."[70]

Most of the "admissions" NCCo calls out are statements from Hersha's Answer, not the Counterclaim.[71] And, as mentioned before, a counterclaim is itself deemed a separate cause of action.[72] In turn, "the Court is limited to considering only the facts alleged in the Counterclaim when deciding a motion to dismiss."[73] So, it's not wholly clear that the Court should rely on any supposed "admission" in the Answer. But more fundamentally, it is clear from both the Counterclaim and Answer that Hersha insists the Termination Letter's alleged termination was invalid and

---

5, 2012)).

[68] *See* MTD at 6-7, 12-14; MTD Reply at 7, 9-10.

[69] *Merritt v. United Parcel Service*, 956 A.2d 1196, 1201-02 (Del. 2008) (citing quoting *AT&T Corp. v. Lillis,* 953 A.2d 241, 257 (Del. 2008)).

[70] *Merritt*, 956 A.2d at 1202; *Lillis,* 953 A.2d at 251.

[71] *See, e.g.*, MTD Reply at 7 (citing Am. Answer ¶¶ 63-64 ("[t]he County improperly terminated the Agreement."), 79 ("the County breached the PMA by improperly terminating Hersha."); Am. Answer at Twenty-Fourth Affirmative Defense ("the County's termination of the Agreement was improper.").

[72] *Gentile v. SinglePoint Financial, Inc.*, 787 A.2d 102, 109 (Del. Ch. 2001) (internal quotes omitted).

[73] *Matthew v. Laudamiel*, 2012 WL 605589, at *13 n.97 (Del. Ch. Feb. 21, 2012).

ineffective.[74]  For example, although the Counterclaim states "the County *wrongfully* terminated the PMA,"[75] it also alleges "the County did not have a right to terminate the PMA."[76]  Accordingly, Hersha hasn't admitted that NCCo properly terminated the PMA.

Because the Counterclaim states a reasonably conceivable claim that the County breached the PMA and Hersha is owed a termination fee, the Court **DENIES** NCCo's Motion to Dismiss.

## B. HERSHA'S 25TH AFFIRMATIVE DEFENSE COULD BE DEEMED UNTIMELY, BUT HERSHA CAN NEVERTHELESS RELY ON PMA SECTION 16.5.

The County's Motion to Strike asks the Court to excise Hersha's twenty-fifth Affirmative Defense because of its supposed untimeliness.[77]  Under Rule 8(c), "[i]f a defendant does not plead an affirmative defense in its first responsive pleading, then the affirmative defense is waived."[78]  No doubt, Hersha didn't assert its twenty-fifth affirmative defense in its first Answer.  In the norm, unless Hersha could amend its Answer or permissibly raise its twenty-fifth Affirmative Defense in a subsequent pleading,[79] the defense could be deemed untimely.

---

[74]  *See, e.g.*, Countercl. ¶¶ 1, 5-6, 8.

[75]  *Id.* ¶ 1 (emphasis added).

[76]  *Id.* ¶ 6.

[77]  MTD at 19-21.

[78]  *Marshall*, 2018 WL 5308176, at *2.

[79]  There are two exceptions to the general rule that an affirmative defense must be asserted in the

But Hersha suggests it could just amend its Answer as of right to add the twenty-fifth Affirmative Defense.[80]  Rule 15(a) allows a party to amend a pleading "as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted . . . any time within 20 days after it is served."[81]  Hersha amended its Answer over a month-and-a-half after the initial filing, long after 15(a)'s 20-day window expired.[82]  No matter, says Hersha, it could nevertheless amend its Answer because NCCo had not yet filed a responsive pleading.[83]  But an answer containing *affirmative defenses* doesn't necessarily prompt any responsive pleading.[84]  And to the extent Hersha is relying on NCCo's decision to not answer the Counterclaim, that argument ignores that a

---

first responsive pleading: "First, there is an exception 'where it is impossible to determine issues of the defendant's negligence and proximate cause without considering the actions of the plaintiff[.]' The second exception occurs 'if evidence of an unpled affirmative defense is admitted without objection.'" *Id.* (quoting *Schwartzkopf v. Esham*, 2003 WL 22853531, at *1 (Del. Super. Ct. July 1, 2003)).  Hersha does not argue that either exception applies. *See generally* MTD Opp'n at 15-19.  Nor could it.  Hersha's twenty-fifth Affirmative Defense, based on Section 16.5 of the PMA, in no way depends on NCCo's actions or Hersha's negligence.  Moreover, NCCo objected to Hersha's twenty-fifth Affirmative Defense at the first opportunity—in these motions.

[80]  MTD Opp'n at 16-19.  Hersha doesn't argue that it had NCCo's consent or leave of the Court to amend the Answer. *Id.*

[81]  Super. Ct. Civ. R. 15(a).

[82]  *See* Answer; Am. Answer.

[83]  MTD at 16-19.

[84]  *E.g.*, *Fed. Nat'l Mortgage*, 2015 WL 6437621, at *3 ("Defendant asserts that she is entitled to default judgment because Plaintiff failed to reply to Defendant's Answer and Affirmative Defenses.  It should be noted that no reply or response is required or permitted, pursuant to Superior Court Rule 7(a)." (internal quotes omitted)).

- 14 -

counterclaim is a separate pleading.[85]  Accordingly, it's not at all clear that Hersha could amend its Answer as of right, and its twenty-fifth Affirmative Defense might be deemed untimely.

But the inquiry shouldn't end there.  The Court must consider the effect of striking that defense on the scope of issues in this litigation and whether NCCo was prejudiced by the alleged tardiness.[86]  Hersha argues that even if its affirmative defense is untimely, it can nevertheless rely on Section 16.5's damage limitation.[87]

It is well-understood that Delaware "is more contractarian than many other states."[88]  Consequently, "Delaware law requires courts to enforce the plain and unambiguous terms of a contract as the binding expression of the parties' intent."[89]  Based on that principle, the Court has held "a damage limitation imposed by clear contractual language is not an affirmative defense."[90]

---

[85]  *See De Reimer v. Tunnell & Raysor*, 1986 WL 13102, at *1 (Del. Super. Ct. Sept. 11, 1986) ("Rule 7(a) contemplates that the pleadings shall be a complaint, an answer, *a counterclaim* and a reply to a counterclaim[.]" (emphasis added)). *See also RGIS International Transition Holdco, LLC v. Retail Services Wis Co.*, 2024 WL 568515, at *1 n.1 (Del. Super. Ct. Feb. 13, 2024) (intimating that "the Complaint, Answer, [and] Counterclaims" are separate pleadings).

[86]  *Fletcher v. Ratcliffe*, 1996 WL 527207, at *2 (Del. Super. Ct. Aug. 6, 1996) ("If the defendant raises [an affirmative defense] at a pragmatically sufficient time and the plaintiff is not prejudiced in her ability to response, there is no waiver."), *aff'd*, 1996 WL 773003 (Del. Dec. 24, 1996) (*en banc*).

[87]  MTD Opp'n at 19.

[88]  *GRT, Inc. v. Marathon GTF Technology, Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. July 11, 2011).

[89]  *Outbox Systems, Inc. v. Trimble, Inc.*, 2024 WL 1886089, at *8 (Del. Super. Ct. Apr. 30, 2024) (cleaned up).

[90]  *LG Electronics*, 2024 WL 4675050, at *7.

Section 16.5 imposes a damage limitation.[91] As such, even if the Court were inclined to strike the twenty-fifth Affirmative Defense—which it is not—Hersha wouldn't be barred from relying on Section 16.5 in this litigation. That comports with PMA Section 22.5 which provides, "[a] waive[r] of any of the terms and conditions of this Agreement may be made in writing and shall not be deemed a waiver of such terms and conditions of any future occasion."[92] Moreover, as stressed at argument, the Court retains "discretion to permit [Hersha] to amend its answer to assert" its twenty-fifth Affirmative Defense.[93] The Court would be inclined to permit such an amendment given the lack of unreasonable delay by Hersha and the fact that the case is still in the early stages of litigation.[94] As such, the Court won't strike

---

[91] PMA § 16.5 ("[e]ach party hereto *irrevocably waives any right* such party may have against the other party hereto at law, in equity or otherwise *to any consequential damages, punitive damages, special or exemplary damages*." (emphasis added)).

[92] PMA § 22.5.

[93] *Festival Fun Parks, LLC v. MS Leisure Company*, 2023 WL 8714994, at *7 (Del. Super. Ct. Dec. 18, 2023).

[94] The cases NCCo cites to support its prayer to strike, are differentiable and compel no other result. *See* MTD at 19-21 (citing *Marshall v. Payne*, 2018 WL 5308176, at *2 (Del. Super. Ct. Oct. 25, 2018); *Fletcher*, 1996 WL 527207, at *2); MTD Reply at 14-16 (same). In both *Marshall* and *Fletcher*, the Court relied on the prejudice to the plaintiff that resulted from the defendant's untimely assertion of an affirmative defense. *See Marshall*, 2018 WL 5308176, at *3 ("[i]n addition to the untimeliness of Defendant's Motion to Amend Answer, this Court finds that Defendant's proposed amendment would prejudice Plaintiff[.]"); *Fletcher*, 1996 WL 527207, at *3-4 (holding the defendant "waived the right to assert [an affirmative] defense," because the plaintiff was prejudiced by the delayed filing). This Court, in each case, based its finding of prejudice on the lengthy amount of time between the filing of the initial and amended Answers. *See Marshall*, 2018 WL 5308176, at *1-2 (finding prejudice based on an 18-month delay between defendant's filing of an initial and amended answer); *Fletcher*, 1996 WL 527207, at *1, 3 (finding prejudice because "[t]he answer was amended to include the defense some 23 months after the answer was initially filed[.]"). Here, there is no similar basis for prejudice because Hersha filed its Amended Answer less than two months after its initial Answer and only three months after

Hersha's twenty-fifth Affirmative Defense, because doing so wouldn't narrow the scope of the litigation and NCCo hasn't articulated any real prejudice occasioned by Hersha's slightly-delayed filing. NCCo's Motion to Strike is, therefore, **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** NCCo's Motion to Dismiss, because the Counterclaim states a reasonably conceivable claim that the County breached the PMA. The Court also **DENIES** NCCo's Motion to Strike Hersha's twenty-fifth Affirmative Defense.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

---

NCCo filed its complaint. *See* Answer; Am. Answer.; Compl. NCCo articulates no alternative basis for finding prejudice because of Hersha's delayed filing of its twenty-fifth Affirmative Defense. As the Court recognized in *Fletcher*: "If the defendant raises [an affirmative defense] at a pragmatically sufficient time and the plaintiff is not prejudiced in her ability to response, there is no waiver." *Fletcher*, 1996 WL 527207, at *2 (citing *Johnson v. Cullen*, 925 F.Supp. 244, 247 n.2 (D. Del. 1996)). Therefore, that Hersha's twenty-fifth Affirmative Defense is untimely does not mean that Hersha waived its ability to rely on Section 16.5's damage limitation.